**SCARNATO, Samuel A., Individually and for and on Behalf of his minor children, et al., Plaintiffs,**

v.

**PARKER, Honorable Mrs. Mary Evelyn, Treasurer of the State of Louisiana, et al., Defendants.**

**Civ. A. No. 76–45.**

United States District Court, M. D. Louisiana.

June 16, 1976.

Samuel I. Rosenberg, Polack, Rosenberg, Rittenberg & Endom, New Orleans, La., for plaintiffs.

Jack A. Grant, Gretna, La., for Jefferson Parish School Bd.

John F. Ward, Jr., Baton Rouge, La., for amicus curiae intervenor, Louisiana School Boards Association.

Thomas S. Halligan, Asst. Atty. Gen., Baton Rouge, La., for all defendants.

Before AINSWORTH, Circuit Judge, and WEST and RUBIN, District Judges.

PER CURIAM:

This action seeks to enjoin the enforcement of, and challenges the constitutionality of, the statutory scheme under which general revenues of the State of Louisiana are allocated to parish and city school systems in Louisiana to insure a minimum foundation program of education (MFP) in all public elementary and secondary schools. Jurisdiction of this Court is properly invoked under Title 28 U.S.C. §§ 1331 and 1343. Since plaintiffs seek to enjoin and restrain the enforcement of a duly enacted state statute, and certain resolutions and orders issued pursuant thereto, this statutory three-judge court was properly convened under the provisions of Title 28 U.S.C. § 2281. All of the pertinent facts have been stipulated to by all counsel, or covered by affidavits filed with the consent of all parties, and the record is complete without the necessity of further evidentiary hearing. Plaintiffs seek a preliminary injunction, and defendants seek by motion to have the case dismissed.

■ Article VIII, Section 13 of the 1974 Louisiana Constitution provides, in part, as follows:

"§ 13.  *Funding; Apportionment.*

\*    \*    \*    \*    \*    \*

*(B) Minimum Foundation Program.* The legislature shall appropriate funds sufficient to insure a minimum foundation program of education in all public elementary and secondary schools. The funds appropriated shall be equitably allocated to parish and city school systems according to formulas adopted by the State Board of Elementary and Secondary Education and approved by the legislature prior to making the appropriation.
*(C) Local Funds.* Local funds for the support of elementary and secondary schools shall be derived from the following sources:

First: Each parish school board, Orleans Parish excepted, and each municipali-

ty or city school board actually operating, maintaining, or supporting a separate system of public schools, shall levy annually an ad valorem maintenance tax not to exceed five mills on the dollar of assessed valuation on property subject to such taxation within the parish or city, respectively.

Second: The Orleans Parish School Board shall levy annually a tax not to exceed thirteen mills on the dollar of the assessed valuation of property within the city of New Orleans assessed for city taxation, and shall certify the amount of the tax to the governing authority of the city. The governing authority shall have the tax entered on city tax rolls. The tax shall be collected in the manner, under the conditions, and with the interest and penalties prescribed by law for city taxes. The money thus collected shall be paid daily to the Orleans Parish School Board.

Third: For giving additional support to public elementary and secondary schools, any parish, school district, or subschool district, or any municipality or city school board which supports a separate city system for public schools may levy an ad valorem tax for a specific purpose, when authorized by a majority of the electors voting in the parish, municipality, district, or subdistrict in an election held for that purpose. The amount, duration, and purpose of the tax shall be in accord with any limitation imposed by the legislature. *(D) Municipal School Systems.* For the effects and purposes of this Section, the municipalities of Monroe in Ouachita Parish, and Bogalusa in Washington Parish, and no others, shall be regarded and treated as parishes and shall have the authority granted parishes.

Pursuant to this constitutional mandate the Louisiana State Board of Elementary and Secondary Education, on March 21, 1975, adopted and submitted to the Louisiana Legislature for its approval an "equalization formula" to be applied in the allocation of State general funds to the sixty-six parish and city school boards throughout the State to insure a "minimum foundation program" of education for all public elementa-ry and secondary schools. The formula, a copy of which is attached hereto as Appendix A, was, of course, submitted without specific cost figures or final support figures filled in because those figures, which must necessarily vary from school district to school district, have to be determined in each instance by cost figures furnished by the district involved. The "equalization formula" is exactly what it purports to be, that is, a formula to be used in order to determine the cost to each school district of a "minimum foundation program" in that district, the amount of financial support for the program that will come from the taxes and rents enumerated in the formula, and the amount of contribution from the State general fund that will be needed to make up the difference between the total cost of the program in a particular school district and the amount to be contributed to the cost by the district itself. The only part of the formula that is under attack here is the part that requires the proceeds the parish receives from the 5-mill constitutional ad valorem tax to be included in the support required from the local school district and thus to be deducted from any amount to be contributed by the State. In the formula the deduction for Orleans Parish is based on the proceeds of a 5-mill levy, the same amount deducted for other parishes. It is the plaintiffs' contention, however that since the ratio of assessment to fair market value of immovable property subject to taxation varies greatly from parish to parish in Louisiana, the deduction of the amount that would be yielded by a 5-mill levy in the "equalization formula" denies them the equal protection of the law required by the 14th Amendment of the U. S. Constitution. They also contend that the formula violates Article VIII, Section 13(B) of the 1974 Louisiana Constitution pursuant to which the formula was adopted, because it does not provide for an equitable allotment of funds as mandated by that article.

There is no dispute about the fact that immovable property in Louisiana is not uniformly assessed with respect to its fair market value. Assessors are elected public offi-

cials of each parish, and the assessed value of property, vis-a-vis its fair market value, has always varied from parish to parish. Each parish through its assessor has generally been allowed to determine the assessed value of property for tax purposes without interference from State authorities. This, of course, has resulted in property in some parishes being assessed for tax purposes at higher rates in comparison with its fair market value than property in other parishes. Property in Orleans Parish, where plaintiffs reside, and in some other urban areas, has generally been assessed at higher rates than his property in rural areas. Thus, the 5-mill tax here under attack yields more money on property located in New Orleans than on similar property with an equal fair market value located in those parishes where assessments are lower than those applied in New Orleans. As a further result, when the "equalization formula" is then applied, the contribution exacted from Orleans Parish to support its MFP is proportionately greater than that required of other parishes using lower ratios of assessment to fair market value, and hence the State's equalizing contribution to Orleans Parish will be less than it would have been had Orleans Parish used a lower assessment to fair market value ratio, such as is used in many other parishes. Plaintiffs would apparently have no complaint about this 5-mill contribution if all property in the State were valued at its fair market value and if every parish were required to use the same assessment to market value ratio for tax purposes. But, they say, when unequal assessments are permitted, and then a uniform millage is applied to those unequal assessments and charged against the school district when equalizing funds are distributed by the State, this deprives the various school districts of equal protection of the law and penalizes those districts using a high assessment rate.

There is no evidence in the record to suggest that the plan employed discriminates in any way against any definable category of "poor people" or that it results in the deprivation of a "minimum foundation education" to any class of persons, or

indeed to any individual person. It is clear from the record that the objective of the State's "Minimum Foundation Program" is being accomplished by use of the formula. The only real question is whether or not the plaintiffs have a justifiable claim based upon "district wealth discrimination".

Even if all property were assessed on a uniform basis, the parishes with relatively less valuable immovable property would contribute less to the MFP than the parishes whose residents own more valuable property. Local ability to support MFP diminishes the amount of the state contribution. If the measure of each parish's contribution were based on the total value of its immovable property, or on an assessment based on total value, the plaintiffs concede they would have no complaint. Nor do they contend that this should be accomplished. Instead they contend that some theoretical average of assessment to fair market value should be computed and applied evenly to presumed fair market value state wide. Then 5 mills of this theoretical figure should be computed and used to measure each parish's obligation. This formula would depend on three theoretical figures, not readily susceptible of being computed, the total market value of properties, the statewide average assessment and each parish's average assessment. It would also still make each parish's average relative wealth a measure of the parish's contribution. The amount a parish actually receives from a 5-mill levy on its actual assessment is a real figure, not a hypothetical one, and it takes parochial ability to pay into account in a way that is different, but not constitutionally invalid.

In *San Antonio Independent School District, et al. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), as in the present case, the financing of public elementary and secondary schools was a product of State and local participation. Each Texas school district was required to supplement State aid through an ad valorem tax on property within its jurisdiction. The ad valorem tax assessed for school purposes produced more revenues in some districts

than in others, resulting in some districts having to contribute more local funds to the Minimum Foundation Program than other districts. The differences in productivity of the ad valorem taxes resulted in different amounts of equalizing funds being contributed to the different school districts by the State.

■ In considering the alleged denial of equal protection in violation of the Fourteenth Amendment, the Court said:

It has simply never been within the constitutional prerogative of this Court to nullify statewide measures for financing public services merely because the burden or benefits thereof fall unevenly depending upon the relative wealth of the political subdivisions in which citizens live. In sum, to the extent that the Texas system of school financing results in unequal expenditures between children who happen to reside in different districts, we cannot say that such disparities are the product of a system that is so irrational as to be invidiously discriminatory. 93 S.Ct. at 1307–8.

Just as was the Supreme Court in *Rodriguez,* so are we, "—unwilling to assume for ourselves a level of wisdom superior to that of legislators, scholars, and educational authorities in 50 States, especially where the alternatives proposed are only recently conceived and nowhere yet tested. The Constitutional standard under the Equal Protection Clause is whether the challenged State action rationally furthers a legitimate State purpose or interest." Ibid.

In determining whether the rational relationship test has been met we also take into account that the plaintiffs here seek to reopen only one part of a single year's appropriation, based on a formula effective for only one year; the proposed formula for 1976–77 takes into account a partial equalization of the kind here sought; the Louisiana Constitution adopted in 1974, requires uniform statewide assessment, Art. 7, § 18(A), and a study designed to accomplish its mandate is now under way, see Executive Order 76–2. We do not have here as in *Levy v. Parker,* E.D.La.1972, 346 F.Supp.

897, on which plaintiffs rely, the combination of unequal assessments, limitations on the taxing power of a local government, and payment of state revenues to localities that there composed "the cumulative thrust of Louisiana's trident of constitution and statute" found to be invalid. 346 F.Supp. at 904. We were careful there to distinguish appropriations "not based on a continuing formula," and we pointed out that the assessment policies there considered did not alone deny equal protection.

Considering the entirety both of the Louisiana MFP program and the other efforts now being made by the state, the state's formula for 1975–76 appears at this time to be rationally related to its purpose. The state is pursuing studies in an effort to fulfill the state's own constitutional mandate to achieve equal assessment. It is modifying its formula for parochial contributions to the MFP program. These are still evolving processes. At this time, no denial of equal protection has been shown, and we heed the Supreme Court's admonition,

The consideration and initiation of fundamental reforms with respect to state taxation and education are matters reserved for the legislative processes of the various States, and we do no violence to the values of federalism and separation of powers by staying our hand. 93 S.Ct. at 1309.

■ Since we find no violation of the equal protection clause of the federal constitution, we feel it is wiser to also dismiss the pendent claim asserted under the Louisiana constitution.

Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *United Mine Workers of America v. Gibbs,* 1966, 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218.

For these reasons the plaintiffs' request for a preliminary injunction will be denied and the defendants' motion for summary

judgment dismissing this suit in its entirety will be granted.

### APPENDIX "A"

### EQUALIZATION FORMULA

#### 1975–1976 SCHOOL YEAR—CURRENT BASIS

I. Cost of Minimum Foundation Program (For a full nine-month session, based on membership and other current data at first reporting period 1975–1976)

1. Teachers allotted and employed (Teachers and prinicpals—regular and special education) Number X actual salary according to State Minimum Salary Schedule ...........$_____

2. Special Education Teacher Aides—Number allotted and employed X actual salary to $2,900 ................... _____

3. Supervisors of Instruction—Number allotted and employed X 12/9 of State salary for teacher with a Master's degree and maximum experience ..................... _____

4. Visiting Teachers — Number allotted and employed X 12/9 of State salary for teacher with a Master's degree and maximum experience ....... _____

5. Transportation — Actual cost of approved routes, based on State bus operator's salary schedule, and allowance up to $1,785 for special education bus attendants ............ _____

6. Mandated Costs -- State's share (57%) of costs for sabbatical leave, substitute teachers, and accumulated sick leave severance pay ......... _____

7. Salary Adjustments for Other School Employees --- Cost-of-living increases for school employees who are not governed by a State minimum salary (any new appropriation distributed on basis of number of teachers allotted and employed, and appropriations existing prior to 1/1/75 distributed one-half as in past and one-half on basis of teachers allotted and employed) .................. _____

8. Other Cost—including general control, teaching materials and supplies, operation and maintenance of plant, fixed charges and auxiliary agencies other than transportation. Student membership at first reporting period X $48 ...... _____

Total Cost of Minimum Foundation Program ...........$_____

II. Support for the Minimum Foundation Program (Based on estimated current revenues for 1975–1976)

1. Parish 5-Mill Constitutional Tax (Net collections by school board or 90% of 5-mills of parish assessment, whichever is smaller ............. ...$_____

2. Severance Tax* — School board's share of severance tax proceeds returned to parish of origin .................. _____

3. Rent or Lease of School Lands —50% of total collections, except as otherwise provided in House Bill 180 by Mr. LeBleu of the 1975 Regular Session if House Bill 180 is enacted into law ............. _____

Total Support for Minimum Foundation Program ............ $_____

III. Difference Necessary to Equalize $_____

* inclusion as a support factor dependent upon forthcoming court ruling as to whether or not school boards are to share in severance tax proceeds under new Constitution.

/s/ James E. Fitzmorris, Jr.
LIEUTENANT GOVERNOR AND PRESIDENT OF THE SENATE

/s/ E. L. Henry
SPEAKER OF THE HOUSE OF REPRESENTATIVES