357 So.2d 1216 (1978)
George HORNE, Individually and on behalf of his minor children, and the Jefferson Parish School Board
v.
LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION et al.
No. 11879.
Court of Appeal of Louisiana, First Circuit.
March 20, 1978.
Rehearing Denied May 1, 1978.
Writ Refused June 9, 1978.
Jack A. Grant, Gretna, of counsel for plaintiffs-appellants George Horne et al.
Thomas H. Matuschka, Baton Rouge, of counsel for defendants-appellees La. State Bd. of Elementary and Secondary Education et al.
John F. Ward, Jr., Baton Rouge, of counsel for defendant-appellee La. School Boards Ass'n and intervenor East Baton Rouge Parish School Bd.
Samuel I. Rosenberg, New Orleans, of counsel for intervenor-appellee Orleans Parish School Bd.
Fred H. Sutherland, Shreveport, of counsel for intervenor-appellee Caddo Parish School Bd.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
BLANCHE, Judge.
Plaintiffs-appellants, George Horne, an individual taxpayer, and Jefferson Parish School Board, brought this action to declare unconstitutional and to enjoin the distribution and dispensing of revenues allocated to the several local parish and city school boards under the Minimum Foundation Program (hereinafter referred to as "MFP"), pursuant to a formula adopted by the State Board of Elementary and Secondary Education (hereinafter referred to as "BESE") and approved by the Louisiana Legislature for the fiscal year 1976-77. The prayer for relief in plaintiffs' petition, where pertinent, prays for a judgment declaring that portion of Senate Resolution 89 of the 1976 *1217 Louisiana Legislature using "equalized assessment" (II, 1) illegal and unconstitutional and that a permanent injunction issue against the defendants, enjoining them from dispensing any state funds pursuant to the MFP until or unless:
"1. Any deductions used in calculating the support side of the Minimum Foundation Program formula reflect the actual amount of funds received under the 5 mil [sic] constitutional tax levied; or, alternatively, and, only in the alternative,
"2. The 5 mil [sic] constitutional tax levy be completely eliminated from the support side of the Minimum Foundation Program formula * *." (Record, pp. 15-16)
The following factual narrative will facilitate an understanding of the nature of the plaintiffs' complaint.
The Minimum Foundation Program, as the concept is popularly known, is set forth in the 1974 Louisiana Constitution as Article 8, § 13(B) and is here quoted:
"(B) Minimum Foundation Program. The legislature shall appropriate funds sufficient to insure a minimum foundation program of education in all public elementary and secondary schools. The funds appropriated shall be equitably allocated to parish and city school systems according to formulas adopted by the State Board of Elementary and Secondary Education and approved by the legislature prior to making the appropriation."
Through this program the State of Louisiana has adopted a policy of providing minimum funding standards for the public elementary and secondary schools of the state. The obvious purpose is to provide a minimum level of acceptable educational advantages to the youth of this state. To implement the program, BESE adopts a "cost side" of the program. The cost side establishes the minimum cost of providing certain minimum educational services considered essential to meet the "minimum foundation" established by BESE. The school system of each parish is reviewed and a cost side is calculated for it. Plaintiffs are not attacking the cost side of the program, but we mention it briefly so that the other side of the program known as the "support side" may be more easily understood. As we appreciate it, the support side involves the formula used to fund the cost side, or, simply stated, funding the minimum program. From the total cost of the program in each parish, certain local funds are, in effect, subtracted and the resulting balance is appropriated by the State to complete the funding of the minimum program. Critical to the case before us is the constitutional authority of each school board to levy a five-mill ad valorem tax on the assessed property valuation of each parish. The significance of this factor is that the five-mill tax varies relatively among the parishes depending upon the ratio of the assessed value to the actual market value of the property. For example, if in Parish "A" property with an actual market value of one million dollars is assessed at 5 percent of actual market value, it will yield in taxes $250 ($1,000,000 × .05 × .005); whereas, if in Parish "B" property with an actual market value of one million dollars is assessed at 10 percent of actual market value, it will yield $500. This represents a difference between the two parishes of $250 or 50 percent. Since Parish "B" with the higher assessed valuation receives more taxes and this sum is reduced from the amount which the State will appropriate, the result is that it will receive less funds, relatively, from the State than Parish "A," which, conversely, will receive, relatively, more funds from the State.
In adopting the cost side formula of the MFP for 1976-77, BESE undertook a study known as the "Peters Study." The purpose of this study was to attempt to arrive at a method, in effect, to equalize the five-mill revenue factor among the parishes. This was done by arriving at a "sales-ratio." A sample survey was made in all but one parish of actual sales, reflecting actual values, and assessed values of the same property. The result was a ratio of the actual property value to the assessed property value. *1218 The formula adopted by BESE reflected the difference among the parishes. In the case of Jefferson Parish, its property assessments were lower than the average and it received less funding from the State as a consequence of the formula adopted.
The trial court limited the issues before it to a consideration of the constitutionality of that portion of the Senate Resolution which provided for "equalized assessment" and to the injunctive relief against the appropriate state offices prohibiting them from dispensing any funds pursuant to the MFP. In Written Reasons for Judgment the trial judge found the formula for funding the program was not in violation of the constitution and dismissed plaintiffs' suit for injunctive relief.
In plaintiffs' brief before this Court, they acknowledge that since rendition of the judgment in the trial court all of the funds to be disbursed pursuant to the formula under attack for the fiscal year 1976-77 have been disbursed. However, plaintiffs contend that a justiciable controversy still exists because "the concept of using theoretical dollars for local support instead of actual dollars collected by the local school districts as the local support item in the MFP has been approved by BESE and the 1977 Legislature for the 1977-78 school year."
We do not find in the record that there is any evidence that the program for 1977-78 was approved by BESE or the Legislature. The evidence shows that both the cost side and support side of the formula are changed in varying respects from year to year.
The affidavit of James D. Prescott indicates that recommendations have been made to BESE to update the "Peters sales-ratio study" for 1977-78. The affidavit also indicates that BESE was also considering eliminating from the formula altogether the five-mill constitutional tax charge-back, which is one of the forms of relief requested by these plaintiffs.
Accordingly, we do not view the record with the same finality as the plaintiffs concerning what BESE will finally recommend for 1977-78. Even if it were a fact that the MFP for 1977-78 had been given final approval, it is no part of this lawsuit. Therefore, we view our opinion as to the constitutionality of the formula in the future as purely advisory.
The courts will not rule on questions of law which become moot since their decree will serve no useful purpose and can give no practical relief. Spinato v. Lowe, 239 La. 604, 119 So.2d 480 (1960).
In the present case it would serve no useful purpose to declare that Senate Resolution No. 89 disbursed funds pursuant to a formula that violated constitutional protections. The Senate Resolution pertained only to MFP funds for the fiscal year 1976-77 and after their disbursement, there was nothing to enjoin. Furthermore, even if it were an unconstitutional disbursement, we are powerless to give any remedial relief.
For the above and foregoing reasons, the judgment of the trial court is now moot, and plaintiffs' appeal is dismissed at plaintiffs' costs.
APPEAL DISMISSED.