521 So.2d 390 (1988)
LOUISIANA ASSOCIATION OF EDUCATORS; Shirley Williams; Jesse Spears and Eddie Gucheraux
v.
Honorable Edwin W. EDWARDS, Governor of the State of Louisiana; the Louisiana Legislature Through the Speaker of the House, John Alario; the President of the Louisiana State Senate, Sammy Nunez and William Guste, Attorney General for the State of Louisiana.
No. 87-CA-2247.
Supreme Court of Louisiana.
February 29, 1988.
William J. Guste, Jr., Atty. Gen., Charles L. Patin, Jr., Asst. Atty. Gen., David G. Sanders, Asst. Atty. Gen., for appellants-applicants.
Charles S. McCowan, Jr., David K. Nelson, for appellees-respondents.
DIXON, Chief Justice.
The interpretation of Article VIII, § 13(B) of the Louisiana Constitution of 1974 is at issue here. Article VIII, § 13(B) provides:
"Minimum Foundation Program. The legislature shall appropriate funds sufficient to insure a minimum foundation program of education in all public elementary and secondary schools. The funds appropriated shall be equitably allocated to parish and city school systems according to formulas adopted by the State Board of Elementary and Secondary Education and approved by the legislature prior to making the appropriation."
In January, 1986 the Department of Education submitted a budget request to the Legislative Budget Committee. The department requested $976,876,802 to fund the Minimum Foundation Program for the 1986-87 school year. In Act 17 of 1986, the Louisiana legislature appropriated $42,439,270 less than the amount requested. In November, 1986 plaintiffs, Louisiana Association of Educators (LAE) and individuals[1] *391 sued Governor Edwin W. Edwards,[2] Speaker of the Louisiana House of Representatives John Alario, President of the Louisiana Senate Sammy Nunez and Attorney General William Guste, alleging that the legislature violated Article VIII, § 13(B) because it failed to appropriate the entire sum requested by the Department of Education. Plaintiffs sought a declaration that: the Louisiana legislature is constitutionally mandated to fully fund the Minimum Foundation Program (MFP) in accordance with the formula submitted by the Board of Elementary and Secondary Education (BESE) and approved by the legislature in 1984; the Louisiana legislature violated the provisions of the Louisiana Constitution of 1974 by failing to fully fund the MFP; House Bill 228, Act 17 of 1986 was unconstitutional because it failed to fully fund the MFP. Plaintiffs also prayed that the court render an order to appropriate sums sufficient to fully fund the MFP in accordance with the formula submitted by BESE and approved by the legislature.
Defendants filed exceptions of no cause of action, no right of action, lack of standing and non-justiciability. The exceptions were referred to the merits.
Both sides moved for summary judgment. In their motion for summary judgment, plaintiffs alleged that the legislature violated the provisions of the Louisiana Constitution of 1974 by failing to fund fully the "minimum foundation program" in accordance with the "minimum foundation program"/equalization formula submitted by BESE for the 1986-87 school year and approved by the legislature in 1984. To support their motion, plaintiffs filed an affidavit by the fiscal officer of the Department of Education which asserted that, based on actual pupil enrollment, and a school year of 180 days, the amount needed to fund fully the "minimum foundation program" was $974,532,037 and that the legislature appropriated $42,439,270 less than the amount needed to fund the "minimum foundation program" fully. Plaintiffs also filed a "minimum foundation program" budget request and the "equalization formula" that BESE had adopted and that the legislature had approved in 1984.
Defendants' motion for summary judgment alleged that Article VIII, § 13(B) grants exclusive authority to the legislature to determine what is a sufficient level of funding for a "minimum foundation program."
On August 21, 1987 the district court granted plaintiffs' motion for summary judgment and declared that the legislature violated the provisions of the Louisiana Constitution of 1974 by failing to appropriate sufficient funds to insure a "minimum foundation program" of education in all public elementary and secondary schools in Act 17, 1986 regular legislative session. The district court also ordered the legislature to appropriate the $42,439,270 to the "minimum foundation program." Defendants appealed.
Article VIII, § 13(B) of the Louisiana Constitution of 1974 requires a "minimum foundation program." The purpose of this program is to insure that each public school child in this state receives an equal educational opportunity regardless of the wealth of the parish in which the child resides. See State of Louisiana Constitutional Convention of 1973, Verbatim Transcripts Volume XXVIII, 87th day, November 16, 1973, 108; 88th day, November 17, 1973, 12.
*392 Although the exact phrase "minimum foundation program" appears for the first time in the Louisiana Constitution of 1974, the concept of equalization of educational opportunity dates back to a 1930 amendment to the Constitution of 1921. That amendment provided for as much as $2.00 per educable (child) "to be known as the state equalization fund" to be used for the "purpose of securing equal public school facilities in all the parishes of the State." Article XII, § 14 Const. of 1921, Act VI of Extraordinary Session, November 4, 1930.
Subsequent amendments to the 1921 Constitution required that the legislature appropriate a minimum of $10,000,000 each year for the public school fund. Of this amount, three-fourths was to be distributed among the parish and city school systems on a proportional basis and one-fourth of the amount was to be distributed on the basis of "equalization" to insure a minimum education program.[3]
The Constitution of 1974 simplified what had become a lengthy section on public school funding in the 1921 Constitution. Article VIII, § 13(B) specifically addresses the funding of the "minimum foundation program" and the distribution of those funds. The first sentence of § 13(B) requires the legislature to appropriate funds "sufficient to insure a `minimum foundation program' of education in all public elementary and secondary schools." The second sentence requires that the funds which the legislature appropriates be "allocated equitably" among the parish and city school systems. This sentence then directs that the appropriated funds be allocated according to formulas adopted by BESE and approved by the legislature.
Under the clear language of § 13(B), the responsibility for appropriating funds for the "minimum foundation program" is reserved to the legislature, as it had been in the Constitution of 1921. The difference between the earlier constitutional provision and the one at issue here is that the former set an actual dollar figure as a minimum amount for the school fund; the latter provision gives the legislature greater discretion.
By contrast, the second sentence of § 13(B) requires that both BESE and the legislature share the responsibility of the equitable allocation of the funds appropriated by the legislature.
Article VIII, § 13(B) neither specifies the contents of the "minimum foundation program" nor states who is responsible for preparing the program. However, members of the Constitutional Convention of *393 1973 understood that the legislature and BESE were jointly responsible for creating the program. Verbatim Transcripts, Vol. XXVIII 87th day, November 16, 1973, 101. R.S. 17:22(2)(d) assigns the superintendent of education the duty to "prepare a minimum foundation program, a formula for the equitable allocation of minimum foundation funds to parish and city school systems, and budgets for adoption by the [BESE] board." R.S. 17:7(2) directs BESE to "adopt a minimum foundation program and adopt a formula for the equitable allocation of minimum foundation funds to parish and city school systems."[4]
On January 24, 1986 the Department of Education submitted to the Legislative Budget Committee a "minimum foundation program" budget request in accordance with R.S. 17:7(2) and 17:22(2)(d). The budget request listed items that BESE had apparently adopted as comprising the "minimum foundation program." Essentially these items consisted of school personnel (salaries, sabbatical pay, sick leave pay, workmen's compensation), transportation, utilities, insurance, upkeep of physical plants. Next to each item was the amount requested for the 1986-87 school year. Depending on the specific item, the cost was calculated on student-teacher ratios, minimum salaries, or student membership. The budget totaled $1,034,876,802. After deducting the amount of support from local school systems and accounting for adjustments due school districts, the Department of Education requested $976,876,802 to fund the "minimum foundation program."
The Department of Education also submitted to the Legislative Budget Committee on January 24, 1986 an equalization formula. This formula was a copy of the formula approved by the legislature in House Concurrent Resolution 74 in 1984 and approved again in 1985. This formula listed the same items as for the "minimum foundation program" as were listed in the "minimum foundation program" budget request. Next to each item was a method for calculating the cost of that item (student-teacher ratios, minimum salary, student membership). No dollar figures were listed.
The formula listed, but again with the dollar amounts omitted, the "total cost of the minimum foundation program." The second part of the formula, termed the "measure of local wealth included in the support of minimum foundation program" assessed the amount that each local school system could contribute to the "minimum foundation program." The contribution of each school system was based on an ad *394 valorem tax defined as the "gross yield of 5.5 mills of current assessed value of taxable property." The final part of the formula was the net difference between the cost of the "minimum foundation program" and the local support. The legislature subsequently approved this formula for use in the 1986-87 school year in the appropriation bill. House Bill 228, Act 17, 1986. See Appendix.
Plaintiffs argue that the legislature may not appropriate less money than what is requested in the "minimum foundation program" budget request because the budget request is based on the formula. To arrive at the total cost of the "minimum foundation program" the Department of Education apparently takes each item listed in the formula, uses the method for calculating the cost of that item as listed in the formula, uses the numbers that it has, makes a mathematical calculation and arrives at a dollar amount. Under plaintiffs' theory the legislature has no room for discretion in the amount that it appropriates for the "minimum foundation program" because the legislature approved the formula on which the budget was based. Plaintiffs assert that the legislature could have rejected the formula and approved another formula if it did not intend to fund the "minimum foundation program" in accordance with the formula and the budget request.
Plaintiffs put the cart before the horse. Under the clear language of Article VIII, § 13(B), the function of the formula is to distribute equitably whatever funds the legislature had appropriated; the purpose of the formula is not to set the level of funding. The unequivocal language of Article VIII, § 13(B) dictates that the legislature set the level of funding, subject only to the constitutional mandate that the funds appropriated be sufficient to insure a "minimum foundation program of education in all public elementary and secondary schools."
Not only is the language of Article VIII, § 13(B) plain and unambiguous, but it is also in accord with well settled jurisprudence. The legislature has control over the finances of the state, except as limited by constitutional provisions. Woodard v. Reily, 244 La. 337, 152 So.2d 41, 56 (1963); Wall v. Close, 203 La. 345, 14 So.2d 19, 34 (1943).
Moreover, had the members of the Constitutional Convention of 1973 wanted to allow a part of the executive branch BESE or the Department of Educationto assume a legislative function, it would have done so in explicit language. Except as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative function. New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402, 406 (La.1982).
The mere fact that the legislature failed to appropriate the amount requested does not automatically yield the conclusion that the amount appropriated violated the constitutional mandate that the funds be sufficient to insure a "minimum foundation program in all public elementary and secondary schools." The legislature is not required to fund the "minimum foundation program" in accordance with the formula; the formula is a method for distribution of funds.
Accordingly, there is now judgment in favor of defendants and against plaintiffs vacating the judgment of the district court, granting defendants' motion for summary judgment, and declaring that under Article VIII, § 13(B) of the Louisiana Constitution of 1974, the legislature possesses the sole authority to set the level of funding of the "minimum foundation program," subject only to the constitutional mandate that the funds be sufficient to insure a "minimum foundation program in all public elementary and secondary schools," all at the cost of plaintiffs.

*395
 APPENDIX
 The first pages of the minimum foundation budget request and the equalization formula are reproduced below.
 MINIMUM FOUNDATION PROGRAM BUDGET REQUEST, 1986-87 Schedule No. 19-70-07
 + Increase or -Decrease
 Appropriation from 1985-86
Cost of Minimum Foundation Program Actual, 1985-86 Act 16, of 1985 Requested, 1986-87 Appropriation 
A. Regular Education Program No. 
 1. Regular Teachers 36,124 $568,570,145 $568,570,145 $ 568,570,145 -0-
 ______
 a. Step Increases -0- -0- 2,681,102* +$2,681,102
 ____________ _______________ __________________ _______________________
 Total, Regular Teachers $568,570,145 $568,570,145 $ 571,251,247 +$2,681,102
 2. Instructional Supervisors 2,277.7 53,045,826 53,045,826 53,045,826
 _______
 a. Step Increases -0- -0- 152,796* + 152,796
 ____________ _______________ __________________ _______________________
 Total, Instruction Supervisors $ 53,045,826 $53,045,826 $ 53,198,672 +$ 152,796
 3. Transportation
 a. Base Salary 7,306 Routes 54,321,861 54,321,861 54,321,861 -0-
 b. Operations LRS 17:497A 49,964,329 49,964,329 49,964,329 -0-
 c. NOPSI Act 392 of 1975 4,426,832 4,426,832 4,426,832 -0-
 d. Special Education Transportation 751,208 751,208 751,208 -0-
 _______________ _______________ __________________ _______________________
 Total, Transportation $109,464,230 $109,464,230 $109,464,230 -0-
 4. Sabbatical Leave Pay 1½ beginning
 state salary of teacher with a Bachelor's
 degree multiplied by the number
 on sabbatical leave for the previous
 year 6086 X No. FTE 1,027.5 6,253,365 6,253,365 6,253,365 -0-
 _______
 5. Accumulated Sick Leave Severance Pay
 (75% of actual payments for previous
 year distributed on a per pupil basis) 2,567,254 2,567,254 2,567,254 -0-
 6. Workmen's Compensation (75% of actual
 payments for previous year distributed
 on a per pupil basis) 5,319,761 5,319,761 5,319,761 -0-

*396
 EQUALIZATION FORMULA
1986-87 SCHOOL YEARCURRENT BASIS
I. Cost of minimum foundation program (For a
 full nine-month session, based on membership
 and other current data for October 1,
 1986).
 A. Regular Education Program
 1. Regular Teacherstotal number
 allotted and employed on the basis
 of current student membership* at
 salary according to State Minimum
 Salary Schedule, the allotment
 to be the sum of a school-by-school
 allotment and an allotment
 on a parishwide basis, as follows:
 $
 a. School-by-school based on a 25
 to 1 pupil-classroom teacher
 ratio for all grades with the
 current allotment table for
 secondary schools or departments
 applied to total membership
 in each school, beginning
 at the fourth step.**
 (This eliminates for allotment
 purposes schools with a membership
 of fewer than 117 students,
 except those small high
 schools located more than 10
 miles from the next high
 school. In such cases the
 school will be allotted one
 teacher for each secondary
 grade.)
 b. Parishwide basis on sliding
 scale, beginning with a 200 to
 1 pupil-teacher ratio for the
 first 5,000 student membership;
 350 to 1 for the next
 5,001 to 10,250; 500 to 1 for
 the next 10,251 to 25,250; 750
 to 1 for the next 25,251 to
 50,000; and 1,000 to 1 pupil-teacher
 ratio for membership
 over 50,000.
 c. In addition to the allotment of
 teachers in a. and b. above, a
 supplemental allotment of
 teachers shall be made for
 grades K-3, using the difference
 between a 22 to 1 pupil-classroom
 teacher ratio and a
 25 to 1 pupil-teacher ratio, to
 be applied on a parishwide basis
 to the total membership in
 grades K-3. Any additional
 teachers generated under this
 allotment by reducing the
 funding ratio from 24-1 to 22-1
 shall not be used in the computation
 of administration position
 allotments in I.A. 2.
 Page 2 of 6
NOTES
[1] The named individual plaintiffs in this suit include: Shirley Williams in her official capacity as president of the LAE and individually as a taxpayer of the state; Jesse Spears in his official capacity as executive director of LAE and individually as taxpayer and on behalf of his minor child, a pupil enrolled in the school system of the Parish of East Baton Rouge; Eddie Gucheraux, individually as a taxpayer of the State of Louisiana and on behalf of his two children, students in public schools of the Parish of West Carroll.
[2] Governor Edwards issued two executive orders directing 5% reductions in the funds that the legislature appropriated to the MFP. EWE-86-31 and EWE-86-36. After plaintiffs filed their petitions, the governor ordered that the orders be rescinded. The trial court declared that the issue of whether these orders violated Article VIII, § 13(B) of the Louisiana Constitution of 1974 was moot. Neither side appealed that decision. We do not address that issue here.
[3] Article XII, § 14 of the Constitution of 1921 provides in pertinent part:

"FIFTH: Such other funds as the Legislature has or hereafter may designate, allocate, appropriate, or otherwise provide therefor or destine thereto; provided, that the Legislature must and shall provide, by approriate (sic) tax levies, appropriation or otherwise, a minimum amount in this State Public School Fund of not less than Ten Million Dollars ($10,000,000) per annum. The State Auditor and the State Treasurer shall transfer all balances on hand for public common schools to the State Public School Fund herein provided for, promptly after these amendments and laws shall have gone into effect.
All State funds for the support of public schools as herein, heretofore, or hereafter provided for, shall be segregated and kept in separate bank accounts, apart from all other State funds. Such funds as may be appropriated out of the General Fund shall be paid into the State Public School Fund herein provided for, in twelve equal monthly payments, and all such funds, including any appropriation from the general fund, shall be apportioned and distributed to the parishes and paid out to the parish school boards on the following basis:
(a) Three-fourths (¾) of this State fund shall be apportioned and distributed to the several parish school boards in this State and shall be paid in monthly installments, in the proportion that the number of educable children from six (6) to eighteen (18) years of age, inclusive, in each parish, bears to the total number of such educable children in the State; and the Legislature shall provide for the enumeration of said educable children.
(b) One-fourth (¼) of this State fund shall be apportioned and distributed to the parish school boards on the basis of equalization, so as to provide and insure a minimum educational program in the common public schools, which shall be set up by the State Board of Education for all parishes of the State; provided, that the administration, and regulation of this apportionment, distribution and payment of this fund to the respective parish school boards, shall be under plans, rules and regulations to be made and provided by the State Board of Education, and shall be under the jurisdiction and supervision of said Board."
[4] R.S. 17:22(2)(d) provides that the Superintendent of Education shall provide staff services for the [BESE] Board. The superintendent shall:

"(d) Prepare a minimum foundation program, a formula for the equitable allocation of minimum foundation funds to parish and city school systems, and budgets for adoption by the board. Upon adoption by the board of such program, formula, and budget for the ensuing fiscal year, the superintendent shall submit the budget in accordance with R.S. 39:45.1 and shall submit the minimum foundation program and equalization formula to the Joint Legislative Committee on the Budget for its review not later than the fifteenth day of February in each year on the forms and in the manner prescribed, and accompanied by such other data as the committee may require."
R.S. 17:7(2) states that the [BESE] board shall:
"(2) Adopt a minimum foundation program and adopt a formula for the equitable allocation of minimum foundation funds to parish and city school systems. In adopting such program and formula, funding shall be at the pupil-teacher ratio of twenty students to one classroom teacher for kindergarten through grade three and twenty-five students to one classroom teacher for grades four through six, or as provided for in the General Appropriation Bill with the ultimate goal of twenty students to one classroom teacher for kindergarten through grade three and twenty-five students to one classroom teacher for grades four through six. However, if less than the total amount of funds necessary to implement the pupil-teacher ratios provided herein is appropriated in the General Appropriation Bill, the money appropriated on the basis of the regular education portion of the minimum foundation formula shall be applied first to meeting the ratios established for classroom teachers for kindergarten and then for classroom teachers to meet the ratios for each succeeding grade. Any additional classroom teaching positions generated in meeting the ratio requirements shall not be used in computing authorized administration position allotments. The board shall adopt such program and formula for each ensuing fiscal year in a timely manner so that the program and formula may be submitted to the Joint Legislative Committee on the Budget in accordance with R.S. 17:22(2)(d)."