713 So.2d 1199 (1998)
Miriam S. CHARLET, et al.
v.
LEGISLATURE OF the STATE OF LOUISIANA, et al.
The MINIMUM FOUNDATION COMMISSION, et al.
v.
The STATE of Louisiana, et al.
No. 97 CW 0212.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*1200 Cheney C. Joseph, Jr., Executive Counsel, Office of the Governor, Richard P. Ieyoub, James C. Hrdlicka, Office of Attorney General, Lewis O. Unglesby, Aidan C. Reynolds, and Unglesby & Koch, Baton Rouge, for Defendants/Relators State of Louisiana, et al.
William P. Quigley, Gillis P. Long Poverty Law Center, Loyola Law School, New Orleans, Charles M. Delbaum, Martha J. Kegel, New Orleans Legal Assistance Corp., New Orleans, Louis M. Bograd, American Civil Liberties Union Foundation, Washington, DC, Reginald T. Shuford, American Civil Liberties Union Foundation, New York City, Steven A. Reiss, Eric Ordway, Kerry C. Foley, and Weil, Gotshal & Manges, New York City, for Plaintiffs/Respondents Miriam S. Charlet, et al.
Lloyd N. Shields, Daniel Lund, III, Timothy P. Kirkpatrick, Shannon K. Lowry, and Shields Mott Lund L.L.P., New Orleans, for Plaintiffs/Respondents The Minimum Foundation Commission, et al.
Franklin V. Endom, Jr., Polack, Rosenberg, Endom & Riess, New Orleans, for Plaintiff/Respondent Orleans Parish School Board.
Jack A. Grant, and Grant & Barrow, Gretna, for Intervenors/Respondents School Boards of Various Parishes.
Before GONZALES, PARRO and CHIASSON, JJ.
PARRO, Judge.
The defendants bring this application for a supervisory writ, seeking review of the trial court's denial of their motion for summary judgment. Finding merit in their argument, we reverse the trial court and grant the motion for summary judgment.

FACTUAL AND PROCEDURAL HISTORY
On March 24, 1992, a group of parents of children attending public schools in six Louisiana parishes and the Orleans Parish School Board sued the Louisiana Legislature, the Louisiana State Board of Elementary and Secondary Education ("BESE"), the Superintendent of Education, and the Governor of the State of Louisiana (collectively, "the State" or "the defendants"). The parents sued as individuals and on behalf of their minor children, and sought class certification for all children who were or would be students in the public schools of those parishes, which included East Feliciana, Madison, Orleans, Pointe Coupee, Red River, and St. Helena. The plaintiffs alleged that the State was not fulfilling its responsibility to provide a minimum foundation of education to all children in the public schools of the state, as required by the Louisiana Constitution, and that the State's failure to equitably allocate funding for the schools violated the plaintiffs' constitutional right to equal educational opportunity under the law. The plaintiffs asked the court for a judgment declaring that the State was violating the constitution and laws of Louisiana in various respects, and ordering the State to develop and implement a plan, subject to court approval and periodic review, to bring public education in compliance with the constitution and laws of Louisiana.[1]
A similar suit against the State was filed on the same day by the Minimum Foundation Commission ("the MFC"), an organization of twenty-six school districts *1201 in Louisiana, and by various parents of school children in those parishes, individually and on behalf of their minor children ("the MFC plaintiffs").[2] Like the plaintiffs in the Charlet suit, the MFC plaintiffs enumerated a plethora of deficiencies in the public schools of the MFC districts, including inadequacies in school buildings, grounds, facilities, textbooks, instructional materials, equipment, supplies, quality of teachers, curriculum, support services, support personnel, and student achievement, claiming these problems demonstrated the State's violations of the constitution and laws of Louisiana. The MFC plaintiffs asked the court for declaratory relief and an order directing BESE to develop and implement a plan, subject to court approval and periodic review, to bring the public education system into compliance with the constitution and laws of Louisiana.[3]
On June 26, 1992, the school boards of various other parishes intervened in both suits as plaintiffs. They also asked for judgment: 1) declaring that the Louisiana Constitution obligated the State to provide and ensure a minimum foundation of education for all children in public elementary and secondary schools; 2) setting forth the scope of that obligation; 3) declaring that the State failed to meet its obligation under the constitution; 4) ordering the State to cease such improper operation of the public school system; and 5) ordering the State to develop and implement a plan, subject to court approval, to bring the system into compliance with the constitution and laws of the state. The plaintiffs and intervenors in both suits (collectively, "the plaintiffs") also asked for attorney fees and costs. On December 1, 1992, on the motions of the plaintiffs, the cases were consolidated and transferred to Division D of the Nineteenth Judicial District Court.
The State filed dilatory and peremptory exceptions in the consolidated suits, claiming that plaintiffs' actions: 1) were moot insofar as they related to funds already disbursed; 2) were premature because recent revisions to the annual funding formula had not been tested in practice; 3) called for judicial declarations that would be merely advisory; 4) presented no justiciable controversy; and 5) stated no cause of action. A main point of the State's argument in support of its exception of no cause of action was that the Louisiana Constitution gave the legislative and executive branches complete discretion in formulating and funding the minimum foundation program for public education, which left nothing for the judicial branch to review. The court denied all the exceptions without specifically commenting on the mootness or prematurity issues, but indicating in oral reasons that the plaintiffs had stated a cause of action in requesting the court to examine the constitutionality of the State's decisions. The court explained:
The last thing in the world that this court would wish to do would be to try to usurp the power of any other branch of government. However, having said that, if in fact the court is not the proper legitimate arm of government to review the other branches of government to ascertain whether they are in fact doing the job that they are called upon to do both constitutionally and statutorily, then I don't know who is.... The court feels that the plaintiffs in this case have stated a cause [of] action. It is a justiciable issue.
After the defendants had filed responsive pleadings, and after considerable discovery had occurred in the case, the defendants filed a motion for summary judgment. They argued that, contrary to the plaintiffs' claims, the Louisiana Constitution does not require an "adequate" or "sufficient" or other defined level of funding for the minimum foundation program for education, that the undisputed facts showed BESE had annually devised a formula for the minimum foundation program ("MFP"), that the State had approved and fully funded the program in accordance with that formula, that the State had done all *1202 that was required under the Louisiana Constitution, and accordingly, the defendants were entitled to summary judgment as a matter of law. The defendants also claimed that because the Louisiana Constitution gives vast discretion to the executive and legislative branches in devising and funding the MFP, and because fluctuating political and financial realities require this process to occur within the political arena, the court's role is limited to reviewing the undisputed facts to determine whether the State was and is properly exercising its discretionary function in accordance with the constitution.
The plaintiffs opposed the motion. They asserted that the many problems pointed out in their petition, in depositions, and in affidavits from school administrators constituted factual issues, which were material to the question of whether the State was in compliance with the constitutional mandate. They also urged that the court's previous ruling on the defendants' exceptions was "the law of the case," and prevented further consideration of the separation of powers and justiciability arguments made by the defendants in support of their motion for summary judgment. The plaintiffs further contended that the complex facts required a full trial on the merits to resolve their equal protection claims under the Louisiana Constitution.
On January 14, 1997, the trial court denied the defendants' motion, stating:
Upon a review of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, this Court is of the opinion that several genuine issues of material fact remain in dispute which preclude the granting of the Motion for Summary Judgment. Among those genuine issues of material fact is whether the Legislature of the State of Louisiana has allocated sufficient funds to insure a "minimum foundation program in all public elementary and secondary schools" as mandated by Section 13(B) of the Louisiana Constitution. See Louisiana Ass'n of Educators v. Edwards, 521 So.2d 390, 394 (La.1988).
The defendants applied to this court for a supervisory writ, which the plaintiffs opposed. On March 7, 1997, this court granted the writ, reversed the trial court's ruling denying the motion for summary judgment, and entered judgment in favor of the defendants/relators, granting the motion for summary judgment and dismissing the consolidated suits. An application for rehearing was denied. The plaintiffs in the consolidated suits filed a writ application with the Louisiana Supreme Court, which granted the writ and remanded the case to this court for briefing, argument, and opinion.

SUPERVISORY JURISDICTION AND SUMMARY JUDGMENT
A court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time, according to the discretion of the court. In cases in which a peremptory exception has been overruled by the trial court, the appellate court appropriately exercises its supervisory jurisdiction when the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved. In such instances, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided, in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) (per curiam). This supervisory jurisdiction may also be exercised to reverse a trial court's denial of a motion for summary judgment, and to enter summary judgment in favor of the mover. See Hoover v. Livingston Bank, 451 So.2d 3 (La. App. 1st Cir.1984); Bonfiglio v. Bellsouth Advertising and Pub. Corp., 619 So.2d 135 (La.App. 1st Cir.), writ denied, 620 So.2d 864 (La.1993).
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has *1203 made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918, 922.

APPLICABLE LAWLOUISIANA CONSTITUTION
The equal protection guarantee under the Louisiana Constitution is found in Article I, Section 3, which provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
The substantive provisions of the Louisiana Constitution regarding the State's responsibility for funding public elementary and secondary education are found in Article VIII, as follows:
Preamble
The goal of the public educational system is to provide learning environments and experiences, at all stages of human development, that are humane, just, and designed to promote excellence in order that every individual may be afforded an equal opportunity to develop to his full potential.
§ 1. Public Education System
Section 1. The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system.
* * * * * *
§ 13. Funding; Apportionment
Section 13. (A) Free School Books. The legislature shall appropriate funds to supply free school books and other materials of instruction prescribed by the State Board of Elementary and Secondary Education to the children of this state at the elementary and secondary levels.
(B) Minimum Foundation Program. The State Board of Elementary and Secondary Education, or its successor, shall annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system. Prior to approval of the formula by the legislature, the legislature may return the formula adopted by the board to the board and may recommend to the board an amended formula for consideration by the board and submission to the legislature for approval. The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools. Neither the governor nor the legislature may reduce such appropriation, except that the governor may reduce such appropriation using means provided in the *1204 act containing the appropriation provided that any such reduction is consented to in writing by two-thirds of the elected members of each house of the legislature. The funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation. Whenever the legislature fails to approve the formula most recently adopted by the board, or its successor, the last formula adopted by the board, or its successor, and approved by the legislature shall be used for the determination of the cost of the minimum foundation program and for the allocation of funds appropriated.[4]

ANALYSIS
The defendants present a compelling argument that the legislature is given the sole authority to appropriate and allocate funds from the state fisc. They contend that legislators, elected from all corners of the state, assisted by extensive staffs and research committees, are designated and equipped to evaluate the innumerable demands for state funds and to make the inherently political decisions regarding those monies that will affect all the citizens of the state. They contrast this to the specter of a single judge, chosen by a portion of the electorate in one parish of the state, assisted by one law clerk and a secretary, sorting through the same mountain of information to determine how to finance the needs of public elementary and secondary schools throughout the state. The defendants' position is, of course, a correct statement concerning legislative authority and the political process.
However, the plaintiffs claim that the legislature does not have unfettered power. Its decisions are subject to examination by the judiciary branch, which alone can determine whether the executive and legislative branches are proceeding in accord with constitutional provisions. The district court in this case agreed with the plaintiffs on this point when it ruled on the exception of no cause of action. That decision and the plaintiffs' position are, of course, also correct statements about judicial authority.
But neither of these well-researched and well-articulated civics lessons assists this court in deciding the issues before it, which are whether there are genuine issues of material fact, and whether the defendants are entitled to judgment as a matter of law. To answer these questions, the decisions of the courts of twenty or thirty other states are not particularly helpful, because each state's constitution imposes different requirements on its legislature, and none contains the same language as the Louisiana Constitution. And, although they provide some guidance, the four previous decisions in which courts in this state addressed the financing of public education are also not dispositive of this case, because Article VIII, Section 13, paragraph B of the Louisiana Constitution was amended in 1987, and those cases interpreted the previous language of that provision. See Scarnato v. Parker, 415 F.Supp. 272 (M.D.La. 1976) (per curiam), aff'd, 430 U.S. 961, 97 S.Ct. 1638, 52 L.Ed.2d 352 (1977); Horne v. Louisiana State Bd. of Elementary and Secondary Educ., 357 So.2d 1216 (La.App. 1st Cir.), writ denied, 359 So.2d 621 (La.1978); School Board of Parish of Livingston, La. v. Louisiana State Bd. of Elementary and Secondary Educ., 830 F.2d 563 (5th Cir.1987), cert denied, 487 U.S. 1223, 108 S.Ct. 2884, 101 L.Ed.2d 918 (1988); Louisiana Ass'n of Educators v. Edwards, 521 So.2d 390 (La. 1988). Also, none of those cases addressed the issue of whether the state's method of financing public education violates the equal protection guarantee of the Louisiana Constitution. Cf. Scarnato, 415 F.Supp. 272, 276 (court found no violation of the equal protection clause of the United States Constitution, and dismissed the pendent claim asserted under the Louisiana Constitution) and Livingston, 830 F.2d 563, 573 and 574 n. 20 (plaintiffs amended their complaint to delete all claims under the Louisiana Constitution, and the court found the Louisiana MFP formula being used to fund public elementary *1205 and secondary education did not violate the plaintiffs' rights to equal protection of the laws under the United States Constitution).

Equal Protection Clause of the Louisiana Constitution
Turning first to the plaintiffs' equal protection claim, we note that the Louisiana Supreme Court, in Sibley v. Bd. of Supervisors of Louisiana State Univ., 477 So.2d 1094 (La.1985), recognized that in Article I, Section 3 of its constitution, Louisiana rejected the federal three-tiered system of equal protection analysis. The court stated:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
Sibley, 477 So.2d at 1107-08 (footnotes omitted). See also Progressive Security Ins. Co. v. Foster, 97-2985, p. 7 (La.4/23/98), 711 So.2d 675, 681-82.
The plaintiffs urge that the court cannot decide the equal protection issue by summary judgment because the complex facts underlying their claims of disparate treatment require a full trial on the merits. We disagree. Applying the Sibley criteria, the plaintiffs clearly do not fall within the first two classifications. Therefore, to be entitled to summary judgment as a matter of law, the State must demonstrate only that there is an appropriate state interest for the MFP formula being used to determine and allocate the funds for the public elementary and secondary schools. The burden then shifts to the plaintiffs to show there are genuine issues of fact remaining, and that these are material because they would demonstrate that the challenged classification does not suitably further any appropriate state interest.
The State has established, through the affidavit of Marlyn Langley, the Deputy Superintendent of the Office of Management and Finance for the Louisiana Department of Education, that the current MFP is the continuation and improvement of a new formula adopted by the legislature in 1992. The goals of the formula are to provide equal treatment for pupils with similar needs and to establish programs and learning opportunities which provide a minimum educational program for every individual. Additionally, the formula provides for local choice with respect to the establishment of budgets and tax levies for the support of local schools above the minimum program ensured by the formula. The formula takes into account expenses needed to supply a minimum foundation program of education, while allowing for flexibility and discretion to local school boards in allocating resources.
The affidavit of Dr. John G. Augenblick was also presented in support of the State's motion. Dr. Augenblick conducted extensive studies of Louisiana's public education financing system and recommended the MFP formula approved by the legislature in 1992. This revised MFP formula was specifically designed to eliminate some of the disparities which previously existed, by distributing relatively less money to the wealthier districts and relatively more money to poorer districts. Since the new formula has been in effect, Dr. Augenblick attests, it is accomplishing this goal of providing more state funds to the less wealthy school districts in the state.
Plaintiffs have presented affidavits from a number of persons, all of whom attest to the inadequacies in various aspects of their particular school districts. However, none of this evidence establishes that, simply because the plaintiffs happen to fall within a class of persons living in school districts with fewer taxable resources, the state's formula for *1206 school funding is designed to discriminate against them. On the contrary, the system being used is moving to equalize some of these inherent disparities by allocating more funds to those districts. As the court noted in the Livingston case, "the system cannot be condemned because it imperfectly and incompletely effectuates the state's goals." Livingston, 830 F.2d at 572.
Given the goals of the system being used, and the steps being taken to effectuate those goals in the current MFP formula, the plaintiffs have not demonstrated that a full trial on the merits would allow them to produce any factual information to maintain their equal protection challenge. Accordingly, the defendants are entitled to summary judgment on this issue.

Article VIII of the Louisiana Constitution
The major premise of the plaintiffs' case is that the court must define "minimum" and then determine whether that "minimum" has been met, that is, whether the State has appropriated and/or allocated enough money for their school districts. They argue that insufficient funds have been provided to them, thereby violating the constitutional provision requiring the State to "insure a minimum foundation of education in all public elementary and secondary schools." The district court judge, in denying the motion for summary judgment, tacitly agreed with this premise when she stated that genuine issues of material fact exist for the court to determine, including "whether the Legislature of the State of Louisiana has allocated sufficient funds to insure a `minimum foundation program in all public elementary and secondary schools' as mandated by Section 13(B) of the Louisiana Constitution." (emphasis added). Both the plaintiffs' argument and the district court's conclusion are based on the implicit premise that perhaps the State should be providing more money in order to reach the constitutionally required minimum.
However, the plaintiffs, in making this argument, and the district court, in accepting it, have turned the word "minimum" on its head. Webster's defines the noun, "minimum" as "the least quantity assignable, admissible, or possible in a given case," and when used as an adjective, it is "of, relating to, or constituting a minimum: least attainable or possible." Webster's Third New Int'l. Dictionary, Unabridged, 1438 (1986 ed.) Therefore, the only way to logically discuss "reaching" a "minimum" is to ask whether any less can be provided, such that the least is finally attained. Applying this literal definition, if some funding is being provided by the State to every school district, the State has met whatever quantification may be implied by the word "minimum" in the constitutional provision. It is not necessary for this court to re-define a word which has a generally accepted meaning in common usage.
Despite this conceptual problem in the plaintiffs' phrasing of the issue in this case, this court has no difficulty agreeing with them that if the constitutional provisions were literally interpreted as establishing no inherent limits on the legislative power, the legislature could appropriate and allocate any pittance, which would lead to an absurd result. However, the constitutional provision is not meaningless, simply because of the choice of the word "minimum." As a practical matter, when BESE sets up the MFP formula each year, BESE essentially defines what the least admissible amount shall be for that particular year. By then approving and funding the MFP in accordance with that formula, the legislature "insures" that minimum. This process allows the State the flexibility it needs to fund the public education system, while still accommodating the many other demands on state funds. The goals of the public educational system are clearly stated in the Preamble to Article VIII of the Constitution, and the mechanism for attaining those goals is set out in Section 13. Therefore, to support their motion for summary judgment, the defendants must only establish that they have followed the prescribed mechanism in a conscientious and meaningful attempt to meet the stated goals.
The defendants have done this. Ms. Langley's affidavit stated that the MFP formula adopted by BESE and approved by the legislature has been funded by legislative appropriation each year since 1992 at a level sufficient to fund a minimum foundation program of education as determined by the formula *1207 in effect each given year, as required by Section 13(B). The MFP formula also takes into account the expense of providing school books and instructional materials. The books and instructional materials are prescribed by BESE, and funded through the formula, to comply with Section 13(A). Accordingly, the State is performing, on a continuing basis, the process outlined in Article VIII of the Louisiana Constitution.
The affidavit of Dr. James A. Richardson, an economic consultant to the state of Louisiana, summarized the funding of public elementary and secondary education in Louisiana and made various comparisons to funding levels in other southern states. His data reflects that the money paid by the State is hardly a pittance; for 1996-97, the State budgeted $1.975 billion for distribution to the local school districts through the MFP, plus $100.4 million to be distributed for various specific programs. This amounted to 38.7% of all funds available to the legislature to appropriate in 1996-97 to meet all state obligations. Since 1987-88, MFP funding has grown by 59.8%, whereas the total state general funds available increased by only 40%. These facts demonstrate that the state's commitment to public education has grown in real terms, and as a percentage of available funds. Dr. Richardson also noted that in 1994-95, the state provided $2,769 per pupil, which was 94.2% of the average provided by the fifteen southern states. He also confirmed the information provided by Dr. Augenblick, namely that the current and proposed MFP formulas allocate state support in such a way that lower income parishes receive more per pupil funding from the state, and higher income parishes receive less per pupil funding. This evidence establishes that the amounts being provided by the State, through the procedure established in Article VIII, Section 13(B), are not a mere pittance, but represent a genuine commitment to provide for the public elementary and secondary education of all the children in the state, and to allocate the state's resources in an equitable manner.
These facts, and the many others provided by the defendants in support of their motion for summary judgment, establish that the defendants are complying with the constitutional mandate in good faith. The problems detailed in the numerous affidavits provided by the plaintiffs are not material to a determination of whether the State is in compliance with the requirements of Article VIII. The Louisiana Constitution does not require that the educational funding provided by the state be "adequate" or "sufficient," or that it achieve some measurable result for each pupil or each school district. Article VIII, Section 13(B) requires only that BESE annually develop and adopt a formula; this is being done. The formula is to determine the cost of a minimum foundation program of education and is to allocate funds to parish and city school systems; it does these things. The formula is also to provide for a contribution by every city and parish school system; it does this also. The legislature must annually appropriate funds sufficient to fully fund the current cost to the state of such a program, as determined by applying the approved formula; it has done so. The purpose of this is to insure a minimum foundation of education in all public elementary and secondary schools; a minimum foundation is being provided. The funds are to be equitably allocated to parish and city school systems according to the formula adopted by BESE and approved by the legislature; this formulaic allocation is being done. The MFP formula being used by the State also provides for funds to supply free school books and other materials of instruction, as prescribed by BESE.
The defendants have provided facts demonstrating that all of the constitutional mandates are being followed by the State. There are no genuine issues of material fact. Accordingly, the defendants are entitled to judgment, as a matter of law.

CONCLUSION
We exercise our supervisory jurisdiction to reverse the district court and enter summary judgment in favor of the defendants, dismissing the plaintiffs' claims, at their costs.
REVERSED AND RENDERED.
NOTES
[1] This case was docketed as Miriam S. Charlet, et al. v. Legislature of the State of Louisiana, et al., 379,560, Div. D, Nineteenth Judicial District Court, Parish of East Baton Rouge ("the Charlet suit").
[2] During the course of the litigation, additional school districts joined the MFC plaintiffs; they currently number thirty-one school districts.
[3] This case was docketed as The Minimum Foundation Commission, et al. v. The State of Louisiana, et al., 379,562, Div. I, Nineteenth Judicial District Court, Parish of East Baton Rouge ("the MFC suit").
[4] A proposed amendment to Article VIII, Section 13(B) was passed by 1997 La.Acts No. 1489, § 4, and will become effective following approval by the voters.