WEIMER, J., concurring.
While I agree with the result reached by the majority, I suggest a different analysis to resolve the two salient issues: 1) whether New Type 2 Charter Schools are public schools for funding purposes; and 2) whether local taxes are unconstitutionally diverted to fund New Type 2 Charter Schools in Iberville Parish.
On the first issue, I certainly agree with the majority's determination that charter schools are public schools and the observation that the constitution contains no ban against the legislature funding the New Type 2 Charter Schools. Due to its plenary authority,[1] the legislature is not prohibited from funding charter schools through the Minimum Foundation Program (MFP). However, I find the provision relied on by the majority, i.e ., La. Const. art. VIII, § 13 (B), actually contains an affirmative requirement to fund these schools. Twice within La. Const. art. VIII, § 13 (B) it is stated that the MFP serves "all public elementary and secondary schools." (Emphasis added.) The second such statement is notable for requiring the legislature to "fully fund the current cost to the state of such a program ... in order to insure a minimum foundation of education in all public elementary and secondary schools." Id. (Emphasis added.) Significantly, a New Type 2 Charter School is authorized by a statute ( La. R.S. 17:3973(2)(b)(ii) ), which procedurally either converts "a preexisting public school" or authorizes the creation of "a new school," and in either case the statute requires collaboration "between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education [BESE]." Thus, given the mechanism of its creation and being subject to an ongoing collaboration with BESE, a New Type 2 Charter School sufficiently fits the constitutionally-mandated criteria for funding "all public elementary and secondary schools." La. Const. art. VIII, § 13 (B).[2]
On the local funding issue, I again agree with my learned colleagues, inasmuch as they find this issue can be resolved based on La. Const. art. VIII, § 13 (C). However, I attach a lesser significance to the clause indicating that "the purpose of the [local] tax shall be in accord with any limitation imposed by the legislature." Id. I find it is unnecessary to hold, as the majority does, that the quoted clause empowers the legislature "to establish future limitations, i.e., which would include local funds in the calculation of the *313 MFP formula." Iberville Parish School Board v. La. State Board of Elementary and Secondary Education , 17-0257, 17-0633, 17-0634, op. at 16 (La. 3/13/18), --- So.3d at ----. Rather, I find that other clauses better resolve the local funding issue.
The very first clause of La. Const. art. VIII, § 13 (C) indicates that "[l]ocal funds for the support of elementary and secondary schools shall be derived from the following sources," and then goes on to indicate the various taxes, some mandatory and some optional, which are described more fully in the majority's opinion. The import of the very first clause of La. Const. art. VIII, § 13 (C) is that any educational tax, whether mandatory or optionally, enacted by a given electorate, is subject to being taken into account when deriving the MFP formula. This is so because Section 13 © must be read in context of Section 13 (B),[3] which, in pertinent part, provides that the MFP "formula shall provide for a contribution by every city and parish school system."
Of course, different city and parish school systems will contribute different amounts because the taxes they levy and their respective tax bases vary considerably. The MFP exists-as its name suggests-to provide a basis for funding the various educational systems across the state. As this court has previously explained, "[t]he purpose of [the MFP] is to insure that each public school child in this state receives an equal educational opportunity regardless of the wealth of the parish in which the child resides." Louisiana Ass'n of Educators v. Edwards , 521 So.2d 390, 391 (La. 1988) (citing State of Louisiana Constitutional Convention of 1973, Verbatim Transcripts Volume XXVIII, 87th day, November 16, 1973, 108; 88th day, November 17, 1973, 12).
The fact of differing tax contributions to the MFP is accounted for by another provision in La. Const. art. VIII, § 13 (B). As to the more traditional parish and city schools, a special division of funds is required: "[t]he funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation." Id.
The requirement for "equitably allocat[ing] to parish and city school systems" allows BESE and the legislature to make adjustments geared toward equalizing state funding notwithstanding that local revenues vary widely. Indeed, the quoted language was approved by the state electorate via a constitutional amendment,[4] in part, as a response to the perception that "the [MFP] formulas adopted by BESE during the 1970s and 1980s considered only a small portion of the wealth of local school districts when distributing state funds, resulting in considerable disparities in educational funding between poor and rich parishes." Jackie Ducote, The Education Article of the Louisiana Constitution , 62 La. L. Rev. 117, 132 (2001) (The commentator further noted the constitutional amendment "included a provision 'for a contribution by every city and parish school system.' ").
*314 Notably, the funding priority in La. Const. art. VIII, § 13 (B), to "equitably allocate[ ] to parish and city school systems," is not described as a solitary funding priority. It does not override the first stated directive in La. Const. art. VIII, § 13 (B) to fund "all public ... schools." Thus, there is nothing in La. Const. art. VIII prohibiting an MFP formula from being developed that would allocate funds to New Type 2 Charter Schools in a manner that includes local tax revenues.
What emerges from an evaluation of all of the constitutional provisions cited above is that any optional local taxes, which are the taxes at issue here, are to be evaluated by BESE and the legislature in confecting the MFP formula. As such, BESE and the legislature can formulate and approve an MFP that accounts for any optional local tax in the state's ultimate distribution of funds. According to La. Const. art. VIII, § 13 (B), as between parish and city school systems, the MFP distribution must be "equitably allocated." When New Type 2 Charter Schools are added to the mix of schools to be funded, because the constitution does not otherwise direct how these public schools shall be funded relative to other schools, the MFP may be funded in any manner that does not impinge upon the "equitabl[e] allocat[ion]"[5] that must occur between parish and city schools. See City of New Orleans , 05-2548 at 11-12, 986 So.2d at 12 ("Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit.").
Here, appellees fail to allege, let alone demonstrate, that accounting for the optional local taxes in Iberville Parish as part of the funding for New Type 2 Charter Schools has impinged in any way on the balance of "equitabl[e] allocat[ion]" of funding between any parish and city schools, which is the only balance explicitly required by La. Const. art. VIII, § 13 (B). Indeed, the Iberville Parish School Board represents to this court that the direction in SCR 55[6] to transfer MFP money to Type 2 Charter Schools is done on a per-pupil cost basis for "the city or parish school system in which the attending students reside." More specifically, after receiving MFP funds, the local school board is directed to produce from those state funds a "Local Revenue Allocation" which "is the per-pupil amount produced for the School Board from local sources." Because this "Local Revenue Allocation" is done on a per-pupil basis, which is indexed to the whole student population in the parish, it appears to me that BESE and the legislature have chosen a distribution of state MFP funds that is equitable to all schools concerned. Given that past disparities in funding among systems with differing tax bases have provoked earlier amendments to La. Const. art. VIII, § 13, it further appears that BESE and the legislature have accounted for the raising of local revenues in this instance. Thus, I respectfully concur within the constitutional scheme.
Hughes, J., dissents.
The majority opinion rests on the overly simplistic analysis that Type 2 Charter schools are "public schools."
They certainly are, by legislative definition. But no one disputes that they are public schools, or that the Legislature is free to allocate funds to public schools. The *315 deeper issue, which the majority glosses over, is whether the MFP formula may be used to allocate funds to individual public schools. It has never been done before, because the Louisiana Constitution provides that MFP funds shall be allocated to "school systems" (School Boards).
While the Legislature is free to allocate funds to individual Type 2 Charter Schools, or to any public schools for that matter, to do so through the MFP formula is an unprecedented unconstitutional action and this court whiffs in addressing the constitutional issue. Sending money directly to individual schools may seem desirable, but the Constitution requires that funds from the MFP formula are to be allocated to school systems, not individual schools. As the concurrence acknowledges, referring to it as a "requirement", the Constitution provides that the MFP funds appropriated "shall be equally allocated to parish and city schools systems ." There is no "plenary authority" to ignore the plain words of the Constitution.
There is no question that the funds allocated are ultimately for the benefit of school children. What difference does it make? The Constitutional amendment that requires MFP funds to be allocated to public school systems, rather than individual schools, was voted on by the people . Only the people may change this requirement, not the Legislature. City and parish school systems are managed by elected School Board members, giving property owners and taxpayers a means of assuring responsibility and accountability. Short cuts around the Constitution, even for what may seem laudable or politically expedient, are inimical to democracy and are not cool.

See City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund , 05-2548, pp. 11-12, 986 So.2d 1, 12 (La. 10/1/07).

Although my reasoning on the effect of La. Const. art. VIII, § 13 (B) differs somewhat from that of the majority, I fully agree with the majority's observation that the instant case is distinguishable from Louisiana Federation of Teachers v. State of Louisiana , 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So.3d 1033. While Louisiana Federation of Teachers interpreted La. Const. art. VIII, § 13 (B), unlike the instant case, Louisiana Federation of Teachers addressed MFP funding for schools that were irrefutably nonpublic schools, and this court explicitly indicated it did not purport to define the "breadth of the term 'parish and city school systems.' " Id. , 13-0120, 13-0232, 13-0350 at 26 n.18, 118 So.3d at 1051 n.18.

"In seeking to discover constitutional intent, we are guided by many of the same rules followed in interpreting laws and written instruments. ... Provisions on the same subject matter are interpreted with reference to each other." Caddo-Shreveport Sales and Use Tax Comm'n v. Office of Motor Vehicles, Dep't of Pub. Safety and Corrections , 97-2233, p. 6 (La. 4/14/98), 710 So.2d 776, 780.

See 1987 La. Acts 948, approved November 21, 1987, effective December 27, 1987.

La. Const. art. VIII, § 13 (B).

Senate Concurrent Resolution 55 of 2014 or "SCR 55" is the legislative instrument which approved the MFP at issue in this case.