# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #012

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **13th day of March, 2018**, are as follows:

**BY GENOVESE, J.**:

2017-C-0257
C/W
2017-C-0633
2017-C-0634

IBERVILLE PARISH SCHOOL BOARD v. LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE STATE DEPARTMENT OF EDUCATION C/W LOUISIANA ASSOCIATION OF EDUCATORS, CADDO ASSOCIATION OF EDUCATORS, CALCASIEU ASSOCIATION OF EDUCATORS, INC., CONCORDIA ASSOCIATION OF EDUCATORS, THE EAST BATON ROUGE ASSOCIATION OF EDUCATORS, LAFAYETTE PARISH ASSOCIATION OF EDUCATORS, MADISON ASSOCIATION OF EDUCATORS, MONROE ASSOCIATION OF EDUCATORS, ST. LANDRY ASSOCIATION OF EDUCATORS, ST. MARY ASSOCIATION OF EDUCATORS, ANN BURRUSS, REV. OSCAR HAMILTON, DEBORAH HARGRAVE, MELINDA WALLER MANGHAM AND THOMAS TATE v. STATE OF LOUISIANA, THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF EDUCATION (Parish of E. Baton Rouge)

After de novo review, we find La. Const. art. VIII, § 13, does not prohibit the allocation of state or local MFP funding to New Type 2 charter schools. Accordingly, the declaration of unconstitutionality from the court of appeal is reversed.

REVERSED.

JOHNSON, C.J., dissents and assigns reasons.
WEIMER, J., concurs and assigns reasons.
HUGHES, J., dissents with reasons.

# SUPREME COURT OF LOUISIANA

## No. 2017-C-0257

### CONSOLIDATED WITH

## No. 2017-C-0633

### CONSOLIDATED WITH

## No. 2017-C-0634

**IBERVILLE PARISH SCHOOL BOARD VERSUS
LOUISIANA STATE BOARD OF ELEMENTARY AND
SECONDARY EDUCATION AND THE STATE OF LOUISIANA
THROUGH THE STATE DEPARTMENT OF EDUCATION**

### CONSOLIDATED WITH

**LOUISIANA ASSOCIATION OF EDUCATORS, CADDO ASSOCIATION
OF EDUCATORS, CALCASIEU ASSOCIATION OF EDUCATORS, INC.,
CONCORDIA ASSOCIATION OF EDUCATORS, THE EAST  BATON
ROUGE ASSOCIATION OF EDUCATORS, LAFAYETTE PARISH
ASSOCIATION OF EDUCATORS, MADISON ASSOCIATION OF
EDUCATORS, MONROE ASSOCIATION OF EDUCATORS, ST. LANDRY
ASSOCIATION OF EDUCATORS, ST. MARY ASSOCIATION OF
EDUCATORS, ANN BURRUSS, REV. OSCAR HAMILTON, DEBORAH
HARGRAVE, MELINDA WALLER MANGHAM AND THOMAS TATE
VERSUS STATE OF LOUISIANA, THE LOUISIANA STATE BOARD OF
ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF
LOUISIANA THROUGH THE DEPARTMENT OF EDUCATION**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**GENOVESE, Justice**

We are called upon to determine whether the lower court erred in declaring unconstitutional certain provisions of Senate Concurrent Resolution No. 55 of 2014, which applies the formula contained in La.R.S. 17:3995 and allocates Minimum Foundation Program ("MFP") funding to New Type 2 charter schools.   In accordance with our legally-mandated *de novo* review, we find the court of appeal erred in declaring the constitution prohibits the payment of MFP funds to New Type

2 charter schools. Thus, the appellate court's declaration of unconstitutionality is reversed.

## FACTS AND PROCEDURAL BACKGROUND

In the 2014 regular session, the Louisiana Legislature passed Act 15, a general appropriations bill for the 2014-2015 fiscal year which contained Senate Concurrent Resolution No. 55 ("SCR 55"). SCR 55 is the vehicle by which the legislature approved the 2014-2015 MFP formula adopted by the Louisiana Board of Elementary and Secondary Education ("BESE") as required by La. Const. art. VIII, § 13(B), which dictates that BESE "annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in all public elementary and secondary schools."

The MFP is Louisiana's principal source for funding public elementary and secondary education. The formula developed and adopted by BESE takes into consideration the number of students in each school district and the special characteristics of those students. Presently, once a school system receives its MFP allocation from the state, individual charter schools are allocated their share of those funds pursuant to La.R.S. 17:3995.[1]

_____

[1] Louisiana Revised Statutes 17:3995 provides, in pertinent part:

> A. (1) For the purpose of funding . . . Type 2 charter schools . . . acting as its own local education agency shall receive a per pupil amount each year authorized by the state board each year as provided in the approved minimum foundation program formula. The per pupil amount provided to a Type 1, 2, 3, 3B, or 4 charter school shall be computed annually and shall be equal to the per pupil amount provided through the minimum foundation program formula, determined by the allocation weights in the formula based upon student characteristics or needs, received by the school district in which the student resides from the following sources based on the district's membership count used in the minimum foundation program formula:

> > (a) The state-funded per pupil allocation, based upon the weighted student membership count, received by the district pursuant to the most recent legislatively approved minimum foundation program formula, including all levels and allocation weights based upon student characteristics or needs as provided in the formula except any supplementary allocations for specific purposes. Supplementary allocations for specific purposes shall be provided to charter schools

The plaintiffs, Iberville Parish School Board ("IPSB") and the Louisiana Association of Educators ("LAE"), [2] each filed petitions for injunctive and declaratory relief, naming as defendants BESE and the State of Louisiana through the Department of Education ("Department"). [3] The suits were consolidated.

The plaintiffs challenged the constitutionality of SCR 55(II)(B) and also sought preliminary and permanent injunctive relief. The plaintiffs alleged SCR 55(II)(B) is an unconstitutional diversion of MFP funds, pursuant to La. Const. art. VIII, § 13(B), which requires the state to annually develop and adopt a formula to determine a minimum foundation program of education in public elementary and secondary schools, and to equitably allocate the funds to parish and city school systems. The plaintiffs asserted SCR 55(II)(B) unconstitutionally allocated MFP funds that are constitutionally allocated to parish and city school systems to new charter schools outside the parish or city school system, i.e., New Type 2 charter schools. Additionally, the plaintiffs contended SCR 55(II)(B) unconstitutionally diverts the local portion of the per-pupil amount mandated in the MFP. IPSB, not

<hr>

based solely on the funds generated by the charter school within each specific allocation.

(b)(i) Local revenues received during the prior year by the school district from the following sources:
    (aa) Sales and use taxes, less any tax collection fee paid by the school district.

    bb) Ad valorem taxes, less any tax collection fee paid by the school district.

    (cc) Earnings from sixteenth section lands owned by the school district.

[2] LAE was joined by nine local affiliates and five private taxpayers—all are listed in the caption. Unless otherwise noted, this opinion refers to all parties so aligned as plaintiffs.

[3] Later intervening in the district court as parties aligned with BESE and the Department were the following charter schools: Community School for Apprenticeship Learning, Inc. d/b/a Madison Preparatory Academy; Lake Charles Charter Academy Foundation, Inc.; International School of Louisiana; New Orleans Military and Maritime Academy, Inc.; Delta Charter Group; Delhi Charter School; Glencoe Education Foundation, Inc. d/b/a V.B. Glencoe Charter School; and Louisiana Association of Public Charter Schools. Unless otherwise noted, this opinion refers to all parties so aligned as defendants.

3

LAE, also sought damages for all MFP funds which defendants allegedly unlawfully diverted from IPSB to New Type 2 charter schools.

SCR 55 dictates that MFP funds shall be paid to New Type 2 charter schools. The provisions of SCR 55 to which the plaintiffs object state, in pertinent part:

**II.  FORMULA CALCULATIONS FOR STATE-APPROVED PUBLIC SCHOOLS**

. . . .

**B.    NEW TYPE 2 CHARTER SCHOOLS**

A New Type 2 [c]harter school is a Type 2 [c]harter school[4] approved after July 1, 2008 by the State Board of Elementary and Secondary Education.

1. State Cost Allocation.

a. Any New Type 2 [c]harter [s]chool shall annually be provided a State Cost Allocation as determined by the formula contained in R.S. 7:3995.

b. The State Cost Allocation equals the number of students multiplied by the average State Cost Allocation Per Pupil for the system in which the student resides.

c. Mid-Year Adjustments shall adhere to the guidelines established in this document.

2. Local Cost Allocation.

a. Any New Type 2 [c]harter school shall annually be provided a Local Cost Allocation by applying the formula contained in R.S. 17:3995.

b. The Local Cost Allocation equals the number of students multiplied by the Local Cost Allocation Per Pupil for the system in which the student resides.

c. One exception to R.S. 17:3995 is that the Local Cost allocation will be funded with a transfer of the MFP monthly amount representing the Local Cost Allocation from the city or parish school system in which the attending students reside.

---

[4] A Type 2 charter school is defined by La.R.S. 17:3973(2)(b)(ii), in pertinent part, as "a new school or a preexisting public school converted and operated as the result of and pursuant to a charter between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education."

4

d. The city or parish where students attending the New Type 2 [c]harter school reside is the local taxing authority and shall provide the local support for the students.

e. Mid-Year Adjustments will adhere to the guidelines established in this document.

. . . .

4. Where student attendance is from multiple school systems, the Department of Education shall determine the Local Cost Allocation based on students reported by the schools. The student membership count of the New Type 2 charter schools shall be included in the membership count of the city or parish school board in which the student resides to determine the Local Cost Allocation.

5. In the first year of operation, a New Type 2 [c]harter school shall be allocated funding based on an estimated student count since a February 1 student count does not exist. The allocation will be finalized based on the October 1 student count.

6. The exclusion of any portion of local revenues specifically dedicated by the legislature or by voter approval to capital outlay or debt service shall be applicable only to a charter school housed in a facility or facilities provided by the district in which the charter school is located.

SCR 55(II)(B).

After a three-day trial, the district court entered a judgment in favor of defendants, dismissing plaintiffs' claims. In oral reasons, the district court ruled that SCR 55(II)(B) does not violate the constitution. The district court first determined that Type 2 charter schools are public schools, noting "all parties agree that the Type 2 charter schools are public schools, are public entities." Next, the district court considered whether or not the funds through the MFP go to New Type 2 charter schools, as defendants contend, or if the constitution says the funds through the MFP go only to the city and parish school systems, as plaintiffs assert. The district court rejected plaintiffs' assertion, focusing on the word "public" in La. Const. art. VIII, § 13(B). The district court found the MFP formula adopted by BESE does not violate La. Const. art. VIII, § 13(B), because charter schools are public schools, and

as such, BESE is required to "annually develop and adopt a formula which shall be used to determine the cost of a minimum foundation program of education in **all public** elementary and secondary **schools** as well as to equitably allocate the funds to parish and city school systems." La. Const. art. VIII, § 13(B) (emphasis added). In addition, the district court rejected the plaintiffs' contention that SCR 55(II)(B) unconstitutionally diverts the local portion of the per-pupil amount mandated in the MFP.

The court of appeal reversed the district court, declaring unconstitutional the diversion of MFP funds to New Type 2 charter schools pursuant to SCR 55(II)(B). A majority of a five-judge panel found that SCR 55(II)(B) unconstitutionally diverts MFP funds constitutionally mandated to be allocated to parish and city school systems to new charter schools outside the parish or city school system, in violation of La. Const. art. VIII, § 13(B).[5] Relying largely on *Louisiana Federation of Teachers v. State of Louisiana*, 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So.3d 1033, the majority concluded that "New Type 2 charter schools are not public schools in the sense of the Louisiana Constitution." *Iberville Par. Sch. Bd. v. La. State Bd. of Elementary & Secondary Educ.*, 15-1416, 15-1417, p. 10 (La.App. 1 Cir. 1/9/17), 2017 WL 90541 (unpub'd). The majority remanded IPSB's damage claim to the district court.

Two judges dissented, finding "no exceptions in the language of the constitution that provide that public schools that are not part of the parish or city school systems are somehow different from other public schools or that they should be funded differently." *Id.* at 14. The dissenting judges would, however, have

---

[5] The record indicates this matter was briefed and argued once before a three-judge panel and twice before a five-judge panel before an opinion was eventually rendered.

required a remand for further examination of the local tax dedications that provide revenue support for the parish school system.[6]

The defendants filed two identical writ applications (2017-C-0257 and 2017-C-0633),[7] seeking reversal of the court of appeal's judgment which declared that New Type 2 charter schools are not public schools, and that the methodology in SCR 55(II)(B), applying the formula in La.R.S. 17:3995, which provides MFP funding to New Type 2 charter schools, is unconstitutional. IPSB filed a writ application (2017-C-0634), seeking a determination that damages should have been awarded for the unconstitutional diversion of MFP funds to New Type 2 charter schools.[8] We granted writs pursuant to our appellate jurisdiction, *see* La. Const. art. V, § 5(D), to review the appellate court's declaration of unconstitutionality.[9] *LaPointe v. Vermilion Par. Sch. Bd.*, 15-0432, p. 5 (La. 6/30/15), 173 So.3d 1152, 1157; *World Trade Ctr. Taxing Dist. v. All Taxpayers, Prop. Owners*, 05-0374, p. 1 (La. 6/29/05), 908 So.2d 623, 626.

## DISCUSSION

At the forefront of our review is Article VIII of the Louisiana Constitution of 1974, entitled "Education," which contains the substantive provisions regarding the state's obligations to the public educational system. Under La. Const. art. VIII, § 1, the legislature is required to "provide for the education of the people of the state and

---

[6] The plaintiffs urge it is implicit in the decision to remand that defendants use of the MFP to seize IPSB's dedicated tax revenue and transfer it to New Type 2 charter schools is unconstitutional.

[7] The second (2017-C-0633) was filed to foreclose any question of timeliness as the first (2017-C-0257) was filed before the appellate court denied rehearing.

[8] IPSB asserts herein that the appellate court erred in opining that evidence and argument offered during trial was limited to declaratory and injunctive relief. *See Iberville Par. Sch. Bd.*, 15-1416 at p. 6, n. 5.

[9] This court granted and consolidated the applications in order to expeditiously resolve all of the issues presented. *Iberville Par. Sch. Bd. v. La. State Bd. of Elementary & Secondary Educ.*, 17-0257 (La. 5/12/17), 220 So.3d 745, and *Iberville Par. Sch. Bd. v. La. State Bd. of Elementary & Secondary Educ.*, 17-0633, 17-0634 (La. 6/5/17), 219 So.3d 1110.

shall establish and maintain a public educational system." The requirement to fund public elementary and secondary education is set forth in La. Const. art. VIII, § 13. Under La. Const. art. VIII, § 13(A), the legislature "shall appropriate funds to supply free school books and other materials of instruction prescribed by [BESE] to the children of this state at the elementary and secondary levels." The legislature is also required under La. Const. Art. VIII, § 13(B), to "fully fund the current cost to the state" of a "minimum foundation program of education in all public elementary and secondary schools[,]" and the "funds appropriated shall be equitably allocated to parish and city school systems[.]"

The plaintiffs argue that MFP funds cannot be diverted to New Type 2 charter schools because La. Const. art. VIII, § 13(B), restricts MFP funds to "parish and city school systems." The defendants contend the plaintiffs failed in their burden to prove clearly and convincingly that the constitution imposes substantive limits or requirements on how the MFP is to be developed or implemented. Defendants argue what is clear is that La. Const. art. VIII, § 13 (B), requires the state to fund New Type 2 charter schools because they are public schools.

*Constitutional Interpretation Principles*

The constitutionality of legislation is a legal question, which is reviewed by this court *de novo*. *La. Mun. Ass'n v. State*, 04-0227, p. 45 (La. 1/19/05), 893 So.2d 809, 842 (citing *Cleco Evangeline v. La. Tax Comm'n*, 01-2162, p. 3 (La. 4/3/02), 813 So.2d 351, 353). In our *de novo* review, we are mindful that certain principles apply. There is a presumption that legislative instruments are constitutional; therefore, the party challenging its validity has the burden of proving its unconstitutionality. *La. Fed'n of Teachers*, 13-1020 at p. 21, 118 So.3d at 1048 (citing *State v. Citizen*, 04-1841, p. 11 (La. 4/1/05), 898 So.2d 325, 334; *Louisiana Mun. Ass'n*, 04-0227 at p. 45, 893 So.2d at 842; *Bd. of Comm'rs of N. Lafourche*

8

*Conservation, Levee & Drainage Dist. v. Bd. of Comm'rs of Atchafalaya Basin Levee Dist.*, 95-1353, p. 3 (La. 1/16/96), 666 So.2d 636, 639).

The provisions of the Louisiana Constitution are not grants of power; instead, they are limitations on the otherwise plenary power of the people exercised through the legislature. *La. Fed'n of Teachers*, 13-0120 at p. 21, 118 So.3d at 1048 (citing *La. Mun. Assoc.*, 04-0227 at p. 45, 893 So.2d at 842; *Bd. of Comm'rs of N. Lafourche Conservation, Levee & Drainage Dist.*, 95-1353 at p. 3, 666 So.2d at 639). The Louisiana Legislature, whom the people elect, may enact any legislation that the constitution does not prohibit. *World Trade Ctr. Taxing Dist.*, 05-0374 at p. 11, 908 So.2d at 632 (citing *Polk v. Edwards*, 626 So.2d 1128, 1132 (La.1993)). In order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. *World Trade Ctr. Taxing Dist.*, 05-0374 at p. 11, 908 So.2d at 632 (citing *Polk*, 626 So.2d at 1132; *In re Am. Waste & Pollution Control Co.*, 588 So.2d 376 (La.1991); *Bd. of Dirs. of La. Recovery Dist. v. All Taxpayers, Prop. Owners*, 529 So.2d 384 (La.1988)). In that context, the party challenging the constitutionality of legislation must cite to the specific provision of the constitution that would prohibit the enactment of the legislation and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the legislation in question. *La. Fed'n of Teachers*, 13-0120 at p. 21, 118 So.3d at 1048 (citing *World Trade Ctr. Taxing Dist.*, 05-0374 at p. 11, 908 So.2d at 632; *Caddo-Shreveport Sales & Use Tax Comm'n v. Office of Motor Vehicles Dep't of Pub. Safety & Corrs.*, 97-2233, pp. 5-6 (La. 4/14/98), 710 So.2d 776, 779; *Polk*, 626 So.2d at 1132).

Because there is a presumption that the legislature acts within its constitutional authority, we must construe legislative instruments so as to uphold

9

constitutionality when it is reasonable to do so. *La. Fed'n of Teachers*, 13-0120 at p. 22, 118 So.3d at 1048 (citing *State v. Fleury*, 01-0871, p. 5 (La. 10/16/01), 799 So.2d 468, 472; *Moore v. Roemer*, 567 So.2d 75, 78 (La.1990)). Stated differently, if a legislative instrument is susceptible to two constructions, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, without doing violence to its language, will maintain its constitutionality. *La. Fed'n of Teachers*, 13-0120 at p. 22, 118 So.3d at 1048 (citing *Hondroulis v. Schuhmacher*, 553 So.2d 398, 416-17 (La.1988)). Nevertheless, the constitution is the supreme law of this state to which all legislative instruments must yield. *La. Fed'n of Teachers*, 13-0120 at p. 22, 118 So.3d at 1048 (citing *World Trade Ctr. Taxing Dist.*, 05-0374 at p. 12, 908 So.2d at 632; *Caddo-Shreveport Sales & Use Tax Comm'n*, 97-2233 at p. 6, 710 So.2d at 780). When a legislative instrument conflicts with a constitutional provision, the legislative instrument must fall. *La. Fed'n of Teachers*, 13-0120 at p. 22, 118 So.3d at 1048 (citing *Caddo-Shreveport Sales & Use Tax Comm'n*, 97-2233 at p. 6, 710 So.2d at 780).

*Diversion of MFP Funds*

There is no dispute that New Type 2 charter schools receive both a state-funded allocation and a local-revenue allocation via SCR 55(II)(B). The issue on appeal is whether SCR 55(II)(B) unconstitutionally diverts these state and local funds. Thus, we must first address whether New Type 2 charter schools are public schools. If New Type 2 charter schools are public schools, then we must address the use of local funds to support New Type 2 charter schools. Louisiana Constitution Article VIII, § 13(B), which establishes the MFP, specifies:

> **(B) Minimum Foundation Program.** The State Board of Elementary and Secondary Education, or its successor, shall annually develop and adopt a formula which shall be used to determine the cost of a minimum

foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system. Prior to approval of the formula by the legislature, the legislature may return the formula adopted by the board to the board and may recommend to the board an amended formula for consideration by the board and submission to the legislature for approval. The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools. Neither the governor nor the legislature may reduce such appropriation, except that the governor may reduce such appropriation using means provided in the act containing the appropriation provided that any such reduction is consented to in writing by two-thirds of the elected members of each house of the legislature. The funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation. Whenever the legislature fails to approve the formula most recently adopted by the board, or its successor, the last formula adopted by the board, or its successor, and approved by the legislature shall be used for the determination of the cost of the minimum foundation program and for the allocation of funds appropriated.

Plaintiffs posit that La. Const. art. VIII, § 13(B), mandates BESE "shall annually develop and adopt a formula . . . to determine the cost of a minimum foundation program of education in all public elementary and secondary schools as well as to equitably allocate the funds to parish and city school systems[;]" thus, there is no discretion—BESE shall give MFP funds **only** to parish or city school systems. However, despite the restriction of La. Const. art. VIII, § 13(B), that MFP funds be allocated only to parish or city school systems, plaintiffs argue SCR 55(II)(B) unconstitutionally allocates an MFP local share and an MFP state share to New Type 2 charter schools. Plaintiffs assert that our holding in *Louisiana Federation of Teachers* squarely supports their position.

Defendants contend that La. Const. art. VIII, § 13(B), imposes no substantive limits or requirements on how the MFP is to be developed or implemented. The constitution explicitly mandates funding of public schools, vesting BESE with the

11

sole authority and discretion to develop the funding formula, after which the legislature may either approve the formula or recommend amendments to the formula for BESE's consideration. The defendants frame the issue as being the state's funding of Louisiana public schools not under the jurisdiction of a parish or city school board. The defendants argue that while the court of appeal's judgment specifically applies to only one category of schools, i.e., New Type 2 charter schools, its rationale would cut off state funding to all public schools that are not under the jurisdiction of a parish or city school board.

The primary basis for the appellate court's declaration of unconstitutionality is its definition of a "public school," which it equates to being synonymous with the phrase "city and parish school systems." The appellate majority relied largely on this court's holding that the diversion of MFP funds from public schools to nonpublic schools violates La. Const. art. VIII, § 13(B). *See La. Fed'n of Teachers*, 118 So.3d 1033. In the present matter, the appellate majority opined:

> According to SCR 55, the definition of city, parish, or local public school systems and schools shall include:
>
>> city or parish school systems, Recovery School District including operated and Type 5 charter schools, Louisiana School for Math, Science, and the Arts (LSMSA), New Orleans Center for Creative Arts (NOCCA), New Type 2 [c]harter schools, Legacy Type 2 [c]harter schools, Office of Juvenile Justice (OJJ) schools, and Louisiana State University and Southern University Lab schools.
>
> Thus, by its own terms, SCR 55 distinguishes, among others, New Type 2 charter schools from city or parish school systems.
>
> . . . .
>
> . . . SCR 55, by its own terms, defines parish and city school systems as unique elements separate and apart from New Type 2 charter schools. Further, New Type 2 charter schools are not public schools in the sense of the Louisiana Constitution. **The court in *Louisiana Federation of Teachers* recognized that "[n]onpublic schools are not owned or operated by 'parish and city school systems.'"** *Louisiana Federation of Teachers*, 118 So.3d at 1055. The case distinguishes

12

between "public schools" and "nonpublic schools" and concludes that MFP funds cannot be diverted to nonpublic schools. See *Louisiana Federation of Teachers*, 118 So.3d at 1055. So, while the New Type 2 charter schools may be subject to the same requirements as public schools and may not necessarily be considered "private" schools, they clearly do not meet the constitutional definition of "public schools" and, therefore, are not entitled to MFP funding.

*Iberville Par. Sch. Bd.*, 15-1416 at pp. 8-10 (emphasis added). The dissent opined that while the constitution does not define "public schools," the constitution is clear that "all public schools are to be funded regardless of whether or not they are part of a city or parish school system." *Id*. at p. 2 (dissent). The minority poignantly noted that both Louisiana State University and Southern University Lab schools existed when this constitutional provision was enacted; neither are part of a city or parish school system; and both are public schools. *Id*.

It bears noting that the plaintiffs in *Louisiana Federation of Teachers*, 118 So.3d 1033, urged that La. Const. art. VIII, § 13(B), restricts MFP funds "to parish and city school systems." Plaintiffs herein employ the same argument. In *Louisiana Federation of Teachers*, this court found MFP funds being diverted to non-public schools unconstitutional, but expressly noted it was not defining the "breadth of the term 'parish and city school systems[.]'" *Id*. at 1051, n. 18.

We disagree with the appellate court's ruling and find the New Type 2 charter schools are in fact public schools. While there is no definition of "public elementary and secondary schools" in the constitution, our legislature has expressed that charter schools are "independent public school[s]." La.R.S. 17:3973(2)(a). We agree with defendants' contention that affirming the court of appeal's rationale, i.e., denying MFP funding because the school is not under the jurisdiction of a parish or city school board, could potentially have adverse consequences to other charter schools, not just New Type 2 charter schools. To interpret La. Const. art. VIII, § 13(B), in

13

the manner the plaintiffs propose would lead to absurd consequences, because some public schools would be funded by the MFP but other public schools would not.

The constitution mandates funding of public schools, vesting BESE with the sole authority and discretion to develop the formula, after which the legislature may either approve the formula or recommend amendments to the formula for BESE's consideration. Louisiana Constitution Article VIII, § 13(B), does not contain a clear and convincing prohibition of MFP funding being allocated to New Type 2 charter schools. Plaintiffs have failed to carry their burden of proving clearly and convincingly that applying the MFP formula to public New Type 2 charter schools in SCR 55 is unconstitutional. Therefore, we reverse the ruling of the court of appeal in this regard.

*Local Cost Allocation*

Because we have found the diversion of MFP funds to New Type 2 charter schools is constitutional, it is necessary for us to address the issue of whether SCR 55(II)(B) violates La. Const. art. VIII, § 13(C), through its use of local funds to support New Type 2 charter schools. As La. Const. art. VIII, § 13(B), requires a contribution to the MFP fund "by every city and parish school system," La. Const. art. VIII, §13(C), identifies proceeds from certain local taxes as the source of this contribution. In pertinent part, La. Const. art. VIII, § 13 (C), provides:

> **(C) Local Funds.** Local funds for the support of elementary and secondary schools shall be derived from the following sources:
>
> > First: Each parish school board, Orleans Parish excepted, and each municipality or city school board actually operating, maintaining, or supporting a separate system of public schools, shall levy annually an ad valorem maintenance tax not to exceed five mills on the dollar of assessed valuation on property subject to such taxation within the parish or city, respectively.
> >
> > . . . .

14

Third: For giving additional support to public elementary and secondary schools, any parish, school district, or subschool district, or any municipality or city school board which supports a separate city system of public schools may levy an ad valorem tax for a specific purpose, when authorized by a majority of the electors voting in the parish, municipality, district, or subdistrict in an election held for that purpose. The amount, duration, and purpose of the tax shall be in accord with any limitation imposed by the legislature.

Plaintiffs argue that local taxes dedicated to public schools have been unlawfully diverted to New Type 2 charter schools operated by private foundations.[10] As just one example, plaintiffs submit a 31-mill property tax which is dedicated in large part to "constructing or purchasing any work of public improvement . . . title to which improvements shall vest in the public."[11] This 31-mill property tax produces about one-third of the local revenue transfer and was voted on and approved by a majority of the electors of Iberville Parish before its

---

[10] During the trial testimony of Jolain Landry, Chief Financial Officer for Iberville Parish School Board, each local tax was introduced into the evidentiary record.

[11] The March 8, 2008 Tax Resolution was introduced into evidence as plaintiffs' exhibit 15:

PARISHWIDE PROPOSITION

SUMMARY:   20 YEAR, 31 MILLS PROPERTY TAX FOR GIVING ADDITIONAL AID TO PUBLIC SCHOOLS IN THE PARISH, INCLUDING PAYMENT OF SALARIES AND BENEFITS OF TEACHERS AND EMPLOYEES, AND CONSTRUCTING OR PURCHASING ANY WORK OF PUBLIC IMPROVEMENT (INCLUDING ACQUIRING AND/OR IMPROVING LANDS FOR BUILDING SITES; PURCHASING, ERECTING AND/OR IMPROVING SCHOOL BUILDINGS AND OTHER SCHOOL RELATED FACILITIES AND ACQUIRING THE NECESSARY EQUIPMENT AND FURNISHINGS THEREFOR) TITLE TO WHICH IMPROVEMENTS SHALL VEST IN THE PUBLIC.

Shall Consolidated School District No. 5 of the Parish of Iberville, State of Louisiana (the "District"), be authorized to levy and collect a special tax of thirty[-]one (31) mills on all property subject to taxation within the District (an estimated $10,540,000 reasonably expected at this time to be collected from the levy of the tax for an entire year), for a period of twenty (20) years, beginning with the year 2008 and ending with the year 2027, for the purpose of giving additional aid to public schools in the Parish, including payment of salaries and benefits of teachers and employees, and constructing or purchasing any work of public improvement (including acquiring and/or improving lands for building sites; purchasing, erecting and/or improving school buildings and other school related facilities and acquiring the necessary equipment and furnishing therefor) title to which improvements shall vest in the public?

15

New Type 2 charter school existed. Plaintiffs further argue that to the extent that New Type 2 charter schools, which are owned by private foundations, use the funds to acquire facilities, they are not "public improvements," and title does not "vest in the public." Therefore, title to the facilities vests in private foundations, which plaintiffs contend violates local tax dedications as well as the Louisiana Constitution.

Defendants argue that the mandate to "equitably allocate" MFP funds contemplated in La. Const. art. VIII, §13(B), also applies to local taxes levied pursuant to La. Const. art. VIII, §13(C). Defendants urge that the MFP formula is meant to fund students of public schools. Because each of the local taxes at issue herein specify they are for the purpose of supporting public schools, and because New Type 2 charter schools are public schools, New Type 2 charter schools are likewise entitled to the inclusion of these funds in the MFP formula.

Under the "First" local funds provision of La. Const. art. VIII, § 13(C), a property tax is required to fund the local "system of public schools." As public schools, New Type 2 charter schools are entitled to receive the benefits of this local tax provision.[12]

The "Third" local funds provision is a discretionary property tax, and it is to be imposed "for a specific purpose" on the condition that "the tax shall be in accord with any limitation imposed by the legislature." The aforementioned 31-mill property tax comes under this "Third" provision. We interpret the use of "any limitation" in this "Third" provision to account for the legislature's power to establish future limitations, i.e., which would include local funds in the calculation of the MFP formula. Any ad valorem tax passed under this optional "Third" provision is subject to the overarching constitutional requirement to conform to the

---

[12] The "Second" local funds provision of La. Const. art. VIII, § 13(C), pertains only to New Orleans and is inapplicable herein.

legislature's direction. Under La. Const. art. VIII, § 13(C), tax dedication language cannot be engineered to prevent local tax revenue from being calculated in the MFP formula when determining allocations to public schools, which includes New Type 2 charter schools.

In *City of New Orleans v. Louisiana Assessors' Retirement & Relief Fund*, 05-2548 (La. 10/1/07), 986 So.2d 1, one of the issues was whether the statutory funding provision of the Assessors' Retirement Fund was an unconstitutional diversion of taxes dedicated to other purposes. This Court reversed the district court's declaration that the statutory funding provision allowed an unconstitutional diversion of dedicated or special taxes to purposes other than those for which they were designated. This Court reasoned that the statute at issue provided only the method of identifying and calculating the amount due, it did not identify the source of the monies to be remitted to the Assessors' Retirement Fund.

In this case, the plaintiffs' view is that local taxes are being used to improve privately-owned facilities to which the public has no title or interest. This is a mischaracterization. Akin to the funding mechanism in *City of New Orleans*, local revenue is considered in the allotment of MFP funds to public schools. Calculation of the local cost allocation includes sales and ad valorem taxes levied by the local school board. These figures are used to calculate a per-pupil local cost allocation. A public school's allotment of MFP funding is based on the number of students enrolled in that particular public school irrespective of whether the improvements made to that particular public school are vested in the public or not. Thus, the use of a phrase in an ad valorem tax, such as "improvements shall vest in the public" does not prohibit the use of local revenue in the funding of New Type 2 charter schools and cannot be used as defense to thwart the goal of La. Const. art. VIII, §13(C). Thus, SCR 55 does not transfer actual local tax revenue to charter schools.

17

**DECREE**

After *de novo* review, we find La. Const. art. VIII, § 13, does not prohibit the allocation of state or local MFP funding to New Type 2 charter schools. Accordingly, the declaration of unconstitutionality from the court of appeal is reversed.

**REVERSED.**

**SUPREME COURT OF LOUISIANA**

**No. 2017-C-0257**

**CONSOLIDATED WITH**

**No. 2017-C-0633**

**CONSOLIDATED WITH**

**No. 2017-C-0634**

**IBERVILLE PARISH SCHOOL BOARD VERSUS LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE STATE DEPARTMENT OF EDUCATION**

**CONSOLIDATED WITH**

**LOUISIANA ASSOCIATION OF EDUCATORS, CADDO ASSOCIATION OF EDUCATORS, CALCASIEU ASSOCIATION OF EDUCATORS, INC., CONCORDIA ASSOCIATION OF EDUCATORS, THE EAST BATON ROUGE ASSOCIATION OF EDUCATORS, LAFAYETTE PARISH ASSOCIATION OF EDUCATORS, MADISON ASSOCIATION OF EDUCATORS, MONROE ASSOCIATION OF EDUCATORS, ST. LANDRY ASSOCIATION OF EDUCATORS, ST. MARY ASSOCIATION OF EDUCATORS, ANN BURRUSS, REV. OSCAR HAMILTON, DEBORAH HARGRAVE, MELINDA WALLER MANGHAM AND THOMAS TATE VERSUS STATE OF LOUISIANA, THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF EDUCATION**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**JOHNSON, C.J.,** dissenting.

I agree with the court of appeal panel that declared the methodology set forth in Senate Concurrent Resolution no. 55 ("SCR 55) (2014) in applying the formula contained in La. R.S. 17:3995, violates La. Const. art. VII § 13 in that it allows the diversion of public school funds to non-public schools.

La. Const. art. VII § 13 provides that the State Board of Elementary and Secondary Education ("BESE") must annually adopt a formula to determine the cost of a Minimum Foundation Program ("MFP") to fund education in all public and

elementary and secondary schools. The funds appropriated by the legislature must be equitably allocated to parish and city school systems so that each system has the resources to meet minimum standards.

The state argues that public schools are not explicitly defined in the Constitution and the definition can be expanded to include Legacy Charter schools, New Type 2 Charter schools, and any other new independent schools created by a charter between BESE and a nonprofit corporation.

Charter schools are not a new phenomena. In fact, this state has a long history where the legislature has appropriated funding for alternative schools. We have the aforementioned Legacy schools, such as LSU and Southern University Laboratory schools, that have been funded separately by the state for more than fifty (50) years. These schools provide wonderful education opportunities. They are also allowed to charge tuition and have selective admission standards.

Historically, we have defined "public schools" as elementary and secondary schools operated and administered by a locally elected parish or city School Board which provides free and open enrollment to every child in the school district.

Local Cost Allocation

In my view, SCR 55 (11)(B) violates La. Const. art. VII § 13(C) through its use of local funds to support New Type 2 Charter Schools. We have long recognized the taxing authority of local school districts. Mandating school funding is not a novelty. In 1888, the issue arose as to whether the police jury in DeSoto Parish should be required to levy taxes for common (public) schools. *See Par. Bd. of Sch. Directors v. Police Jury*, 5 So. 23, (La. 10/17/1888) 40 La. Ann. 755. Since then, we have recognized that the Constitution allows for the collection of *ad valorem* taxes, and sales and use taxes by the parish school boards to fund public schools. *See La. Const. art. VIII sec. 13*. Historically, these funds are specifically dedicated to School

Board use, as were the "Sixteenth Section" lands, which were reserved for the benefit of public schools.

SCR 55 requires that legacy Type 2 Charter Schools and New Type 2 Charter Schools be allotted a local cost allocation according to the formula set out in La. R.S. 17:3995. These local *ad volorem* and sales and use taxes were instituted by majority vote following a ballot initiative. The public vote for institution (or renewal) of school taxes was based on the fact that the taxes were pledged for operation of parish and city schools There can be no diversion of this local tax money to charter schools.

For the reasons above, I respectfully dissent.

SUPREME COURT OF LOUISIANA

No. 2017-C-0257

CONSOLIDATED WITH

No. 2017-C-0633

CONSOLIDATED WITH

No. 2017-C-0634

IBERVILLE PARISH SCHOOL BOARD VERSUS
LOUISIANA STATE BOARD OF ELEMENTARY AND
SECONDARY EDUCATION AND THE STATE OF LOUISIANA
THROUGH THE STATE DEPARTMENT OF EDUCATION

CONSOLIDATED WITH

LOUISIANA ASSOCIATION OF EDUCATORS, CADDO ASSOCIATION
OF EDUCATORS, CALCASIEU ASSOCIATION OF EDUCATORS, INC.,
CONCORDIA ASSOCIATION OF EDUCATORS, THE EAST BATON
ROUGE ASSOCIATION OF EDUCATORS, LAFAYETTE PARISH
ASSOCIATION OF EDUCATORS, MADISON ASSOCIATION OF
EDUCATORS, MONROE ASSOCIATION OF EDUCATORS, ST. LANDRY
ASSOCIATION OF EDUCATORS, ST. MARY ASSOCIATION OF
EDUCATORS, ANN BURRUSS, REV. OSCAR HAMILTON, DEBORAH
HARGRAVE, MELINDA WALLER MANGHAM AND THOMAS TATE
VERSUS STATE OF LOUISIANA, THE LOUISIANA STATE BOARD OF
ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF
LOUISIANA THROUGH THE DEPARTMENT OF EDUCATION

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE*

**WEIMER, J.**, concurring.

While I agree with the result reached by the majority, I suggest a different analysis to resolve the two salient issues: 1) whether New Type 2 Charter Schools are public schools for funding purposes; and 2) whether local taxes are unconstitutionally diverted to fund New Type 2 Charter Schools in Iberville Parish.

On the first issue, I certainly agree with the majority's determination that charter schools are public schools and the observation that the constitution contains

no ban against the legislature funding the New Type 2 Charter Schools. Due to its plenary authority,[1] the legislature is not prohibited from funding charter schools through the Minimum Foundation Program (MFP). However, I find the provision relied on by the majority, *i.e.*, La. Const. art. VIII, § 13(B), actually contains an affirmative requirement to fund these schools. Twice within La. Const. art. VIII, § 13(B) it is stated that the MFP serves "all public elementary and secondary schools." (Emphasis added.) The second such statement is notable for requiring the legislature to "fully fund the current cost to the state of such a program … in order to insure a minimum foundation of education in all public elementary and secondary schools." *Id.* (Emphasis added.) Significantly, a New Type 2 Charter School is authorized by a statute (La. R.S. 17:3973(2)(b)(ii)), which procedurally either converts "a preexisting public school" or authorizes the creation of "a new school," and in either case the statute requires collaboration "between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education [BESE]." Thus, given the mechanism of its creation and being subject to an ongoing collaboration with BESE, a New Type 2 Charter School sufficiently fits the constitutionally-mandated criteria for funding "all public elementary and secondary schools." La. Const. art. VIII, § 13(B).[2]

---

[1] See **City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund**, 05-2548, pp. 11-12, 986 So.2d 1, 12. (La. 10/1/07).

[2] Although my reasoning on the effect of La. Const. art. VIII, § 13(B) differs somewhat from that of the majority, I fully agree with the majority's observation that the instant case is distinguishable from **Louisiana Federation of Teachers v. State of Louisiana**, 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So.3d 1033. While **Louisiana Federation of Teachers** interpreted La. Const. art. VIII, § 13(B), unlike the instant case, **Louisiana Federation of Teachers** addressed MFP funding for schools that were irrefutably nonpublic schools, and this court explicitly indicated it did not purport to define the "breadth of the term 'parish and city school systems.'" *Id.*, 13-0120, 13-0232, 13-0350 at 26 n.18, 118 So.3d at 1051 n.18.

2

On the local funding issue, I again agree with my learned colleagues, inasmuch as they find this issue can be resolved based on La. Const. art. VIII, § 13(C). However, I attach a lesser significance to the clause indicating that "the purpose of the [local] tax shall be in accord with any limitation imposed by the legislature." *Id.* I find it is unnecessary to hold, as the majority does, that the quoted clause empowers the legislature "to establish future limitations, i.e., which would include local funds in the calculation of the MFP formula." **Iberville Parish School Board v. La. State Board of Elementary and Secondary Education**, 17-0257, 17-0633, 17-0634, slip op. at 16 (La. 3/13/18). Rather, I find that other clauses better resolve the local funding issue.

The very first clause of La. Const. art. VIII, § 13(C) indicates that "[l]ocal funds for the support of elementary and secondary schools shall be derived from the following sources," and then goes on to indicate the various taxes, some mandatory and some optional, which are described more fully in the majority's opinion. The import of the very first clause of La. Const. art. VIII, § 13(C) is that any educational tax, whether mandatory or optionally, enacted by a given electorate, is subject to being taken into account when deriving the MFP formula. This is so because Section 13© must be read in context of Section 13(B),[3] which, in pertinent part, provides that the MFP "formula shall provide for a contribution by every city and parish school system."

Of course, different city and parish school systems will contribute different amounts because the taxes they levy and their respective tax bases vary considerably.

---

[3] "In seeking to discover constitutional intent, we are guided by many of the same rules followed in interpreting laws and written instruments. … Provisions on the same subject matter are interpreted with reference to each other." **Caddo-Shreveport Sales and Use Tax Comm'n v. Office of Motor Vehicles, Dep't of Pub. Safety and Corrections**, 97-2233, p. 6 (La. 4/14/98), 710 So.2d 776, 780.

3

The MFP exists—as its name suggests—to provide a basis for funding the various educational systems across the state. As this court has previously explained, "[t]he purpose of [the MFP] is to insure that each public school child in this state receives an equal educational opportunity regardless of the wealth of the parish in which the child resides." **Louisiana Ass'n of Educators v. Edwards**, 521 So.2d 390, 391 (La. 1988) (citing State of Louisiana Constitutional Convention of 1973, Verbatim Transcripts Volume XXVIII, 87th day, November 16, 1973, 108; 88th day, November 17, 1973, 12).

The fact of differing tax contributions to the MFP is accounted for by another provision in La. Const. art. VIII, § 13(B). As to the more traditional parish and city schools, a special division of funds is required: "[t]he funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation." *Id.*

The requirement for "equitably allocat[ing] to parish and city school systems" allows BESE and the legislature to make adjustments geared toward equalizing state funding notwithstanding that local revenues vary widely. Indeed, the quoted language was approved by the state electorate via a constitutional amendment,[4] in part, as a response to the perception that "the [MFP] formulas adopted by BESE during the 1970s and 1980s considered only a small portion of the wealth of local school districts when distributing state funds, resulting in considerable disparities in educational funding between poor and rich parishes." Jackie Ducote, *The Education Article of the Louisiana Constitution*, 62 La. L. Rev. 117, 132 (2001) (The

---

[4] See 1987 La. Acts 948, approved November 21, 1987, effective December 27, 1987.

4

commentator further noted the constitutional amendment "included a provision 'for a contribution by every city and parish school system.'").

Notably, the funding priority in La. Const. art. VIII, § 13(B), to "equitably allocate[ ] to parish and city school systems," is not described as a solitary funding priority. It does not override the first stated directive in La. Const. art. VIII, § 13(B) to fund "all public ... schools." Thus, there is nothing in La. Const. art. VIII prohibiting an MFP formula from being developed that would allocate funds to New Type 2 Charter Schools in a manner that includes local tax revenues.

What emerges from an evaluation of all of the constitutional provisions cited above is that any optional local taxes, which are the taxes at issue here, are to be evaluated by BESE and the legislature in confecting the MFP formula. As such, BESE and the legislature can formulate and approve an MFP that accounts for any optional local tax in the state's ultimate distribution of funds. According to La. Const. art. VIII, § 13(B), as between parish and city school systems, the MFP distribution must be "equitably allocated." When New Type 2 Charter Schools are added to the mix of schools to be funded, because the constitution does not otherwise direct how these public schools shall be funded relative to other schools, the MFP may be funded in any manner that does not impinge upon the "equitabl[e] allocat[ion]"[5] that must occur between parish and city schools. See **City of New Orleans**, 05-2548 at 11-12, 986 So.2d at 12 ("Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit.").

_____

[5] La. Const. art. VIII, § 13(B).

5

Here, appellees fail to allege, let alone demonstrate, that accounting for the optional local taxes in Iberville Parish as part of the funding for New Type 2 Charter Schools has impinged in any way on the balance of "equitabl[e] allocat[ion]" of funding between any parish and city schools, which is the only balance explicitly required by La. Const. art. VIII, § 13(B). Indeed, the Iberville Parish School Board represents to this court that the direction in SCR 55[6] to transfer MFP money to Type 2 Charter Schools is done on a per-pupil cost basis for "the city or parish school system in which the attending students reside." More specifically, after receiving MFP funds, the local school board is directed to produce from those state funds a "Local Revenue Allocation" which "is the per-pupil amount produced for the School Board from local sources." Because this "Local Revenue Allocation" is done on a per-pupil basis, which is indexed to the whole student population in the parish, it appears to me that BESE and the legislature have chosen a distribution of state MFP funds that is equitable to all schools concerned. Given that past disparities in funding among systems with differing tax bases have provoked earlier amendments to La. Const. art. VIII, § 13, it further appears that BESE and the legislature have accounted for the raising of local revenues in this instance. Thus, I respectfully concur within the constitutional scheme.

---

[6] Senate Concurrent Resolution 55 of 2014 or "SCR 55" is the legislative instrument which approved the MFP at issue in this case.

03/13/18

**SUPREME COURT OF LOUISIANA**

**No. 2017-C-0257**

**CONSOLIDATED WITH**

**No. 2017-C-0633**

**CONSOLIDATED WITH**

**No. 2017-C-0634**

**IBERVILLE PARISH SCHOOL BOARD VERSUS LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE STATE DEPARTMENT OF EDUCATION**

**CONSOLIDATED WITH**

**LOUISIANA ASSOCIATION OF EDUCATORS, CADDO ASSOCIATION OF EDUCATORS, CALCASIEU ASSOCIATION OF EDUCATORS, INC., CONCORDIA ASSOCIATION OF EDUCATORS, THE EAST BATON ROUGE ASSOCIATION OF EDUCATORS, LAFAYETTE PARISH ASSOCIATION OF EDUCATORS, MADISON ASSOCIATION OF EDUCATORS, MONROE ASSOCIATION OF EDUCATORS, ST. LANDRY ASSOCIATION OF EDUCATORS, ST. MARY ASSOCIATION OF EDUCATORS, ANN BURRUSS, REV. OSCAR HAMILTON, DEBORAH HARGRAVE, MELINDA WALLER MANGHAM AND THOMAS TATE VERSUS STATE OF LOUISIANA, THE LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION AND THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF EDUCATION**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**Hughes, J., dissents.**

The majority opinion rests on the overly simplistic analysis that Type 2 Charter schools are "public schools."

They certainly are, by legislative definition. But no one disputes that they are public schools, or that the Legislature is free to allocate funds to public schools. The deeper issue, which the majority glosses over, is whether the MFP formula may be used to allocate funds to *individual* public schools. It has never been done

before, because the Louisiana Constitution provides that MFP funds shall be allocated to "school systems" (School Boards).

While the Legislature is free to allocate funds to individual Type 2 Charter Schools, or to any public schools for that matter, to do so through the MFP formula is an unprecedented unconstitutional action and this court whiffs in addressing the constitutional issue. Sending money directly to individual schools may seem desirable, but the Constitution requires that funds from the MFP formula are to be allocated to school systems, not individual schools. As the concurrence acknowledges, referring to it as a "requirement", the Constitution provides that the MFP funds appropriated "shall be equally allocated to parish and city schools *systems*." There is no "plenary authority" to ignore the plain words of the Constitution.

There is no question that the funds allocated are ultimately for the benefit of school children. What difference does it make? The Constitutional amendment that requires MFP funds to be allocated to public school systems, rather than individual schools, was voted on by the *people*. Only the people may change this requirement, not the Legislature. City and parish school systems are managed by elected School Board members, giving property owners and taxpayers a means of assuring responsibility and accountability. Short cuts around the Constitution, even for what may seem laudable or politically expedient, are inimical to democracy and are not cool.